[L. A. No. 1425.    Department One.—February 3, 1906.]

## COMMERCIAL BANK, Plaintiff in Interpleader, v. W. R. H. WELDON, Respondent; and EMMA W. WILLIAMS, and F. W. HANKEY, Appellants.

CONTRACT TO PURCHASE LAND—ABANDONMENT—NEW CONTRACT—INTERPLEADER—PURCHASE MONEY—CREDIBILITY OF PARTY—SUPPORT OF FINDINGS—CONSTRUCTION OF EVIDENCE.—In an action of interpleader to determine the title to a fund which is part of the purchase price of land, where the court found that one of the defendants who had paid part of the purchase price on a first contract had decided not to carry it out, and that it was abandoned, and a new contract made, omitting the grantor of the other interpleading defendants, and such findings were sustained by the testimony of such defendant, it was the province of the court to determine his credibility; and his testimony must be construed by this court as favorably as possible in support of the findings which it tends to sustain.

ID.—UNFULFILLED CONDITIONS—TIME OF ESSENCE—RIGHTS OF VENDOR —NOTICE NOT REQUIRED.—Where the conditions of the first contract of purchase were unfulfilled, and time was made of the essence of

the contract, the vendor was not obligated to notify the other purchasing parties that the first contract was terminated by failure of the purchasers to perform it, and he could make a new contract with the one who had paid him part of the purchase money, for such other disposition of the property as he saw fit.

ID.—PARTY ASSOCIATED UNDER NEW CONTRACT—QUITCLAIM DEED—TRUST NOT CREATED—DEED TO DEFENDANT UNDER NEW CONTRACT NOT A FRAUD.—Where the defendant who took the new contract, and paid the entire purchase money thereunder, had associated another party with him in the contract, who took a quitclaim deed from the grantor of the co-defendants under an agreement that if any interest in the property was acquired under the old contract, if consummated, such party would convey one fourth of such interest to such grantor, and thereafter conveyed all of his interest under the new contract to such purchasing defendant, no trust was created by the agreement made with such grantor, and no fraud was committed upon the grantor of the co-defendants, by the acceptance by the purchasing defendant of the deed to him.

ID.—RECITAL OF FORMER PURCHASE NOT A COVENANT—EFFECT OF COVENANT.—The recital of the former purchase in the agreement did not amount to a covenant to make the purchase thereunder, nor could it, if so construed, bind the defendant who was not a party thereto, and could only in any event make the covenanting party liable to damages for its breach.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Felix W. Ewing, Judge.

The facts are stated in the opinion of the court.

C. A. Storke, and Richards & Carrier, for Appellants.

S. E. Crow, and B. F. Thomas, for Respondents.

LORIGAN, J.—This is an appeal from a judgment accompanied by a bill of exceptions in which the evidence and errors relied on for a reversal are presented. The defendant Weldon had judgment, and two of the other defendants, Mrs. Williams and Hankey, appeal.

The action is one of interpleader, brought by the plaintiff bank, to require defendants to set forth and litigate between themselves their respective claims to a fund of twelve thousand five hundred dollars in the hands of plaintiff, part of the purchase price of a tract of land, to which fund all the defendants asserted a right. The defendant Cayce answered, disclaiming any interest in the fund, and under proper pleadings

the defendant Weldon, on the one hand, and Mrs. Williams and Hankey, jointly interested on the other, press their respective claims to the fund. The admitted facts in the case are as follows:—

On December 6, 1900, one E. W. Chapman held an option to purchase from W. E. Dean, on or before May 1, 1901, about 31,760 acres of the Rancho Los Prietos y Najalayegua, in the county of Santa Barbara. On said December 6, 1900, said Chapman entered into a written agreement to sell to said defendants, W. R. H. Weldon and one H. L. Williams, his interest to said land under said option, on certain terms and conditions, namely, that there should be paid him two thousand five hundred dollars on the signing of the agreement, two thousand five hundred dollars within one hundred and twenty days after said December 6, 1900, and twenty thousand dollars to be paid on or before April 25, 1901. Payment of these sums was made a condition precedent upon which the obligation of Chapman to convey depended, with the further provision that in the event of a failure by Weldon and Williams to make any of such payments the agreement would be null and void and of no effect, that the payments already made by them should be forfeited, and that "time is to be of the essence of this agreement." On the signing of the agreement the two thousand five hundred dollars provided to be paid therein was paid. On April 9, 1901, said H. L. Williams by written agreement transferred all his interest in said contract between Chapman, Weldon, and himself to the defendant E. S. Cayce, which conveyance was at once recorded. On the same day that the conveyance from Williams to Cayce was made an agreement was executed by Cayce and Williams, reciting, among other things, that "whereas, the said H. R. Williams has this day made a quitclaim deed to all his right, title and interest in that certain agreement above mentioned [the agreement of December 6, 1900, with Chapman] to said E. S. Cayce of the city and county of Santa Barbara, state of California; and whereas, the said E. S. Cayce and W. R. H. Weldon are about to raise the necessary money to pay for the said above-mentioned property, it is thereby understood that the reason for my giving a quitclaim deed to the said above-mentioned property with my name connected was because the bank that Cayce and Weldon are borrowing the money from

refuse to loan with my name connected with the transaction: It is hereby understood and agreed by and between the parties hereto that as soon as the said E. W. Chapman, or others, complete the terms of this agreement of sale, December 6, 1900, then the said E. S. Cayce is to transfer back, or cause to be transferred a ¼ undivided interest in said property in the said Los Prietos Ranch containing about 31,760 acres."

This agreement was recorded on October 12, 1901, long subsequent to its execution. On April 18 or 19, 1901, Weldon went to San Francisco from Santa Barbara and obtained a conveyance from Chapman and Dean to himself and Cayce of the portion of the Rancho Los Prietos heretofore referred to. After such conveyance, and on May 9, 1901, Weldon and Cayce entered into a contract with one J. L. Washburn to sell him said property for fifty thousand dollars, of which ten thousand dollars was paid down, and the balance of forty thousand dollars to be paid within one year thereafter, a deed in escrow being deposited with the plaintiff bank to be delivered to said Washburn on payment of such balance. On May 13, 1901, Weldon and Cayce mortgaged said property for seventeen thousand dollars, and on February 17, 1902, Cayce conveyed all his interest in said land to the defendant Weldon. On May 9, 1902, Washburn made final payment of the balance of the purchase price to the plaintiff bank and received the deed. It is the right of the respective parties to twelve thousand five hundred dollars of such balance that is involved in this action. Cayce never transferred to Williams or his assignors any interest in said land or to any of the money derived therefrom, and the defendants Mrs. Williams and F. W. Hankey are the successors in interest of said H. L. Williams thereto, if he had any interest therein.

In addition to these admitted facts the court made findings as to other disputed ones, and such of them as are material we refer to. The court found that the two thousand five hundred dollars paid to Chapman on the execution of the agreement of December 6, 1900, was paid entirely by Weldon, that Williams did not contribute any part of it nor repay to Weldon any part of it; that on the 6th of April, 1901 (being one hundred and twenty days after the execution of the agreement of December 6, 1900), when the second installment of

two thousand five hundred dollars mentioned in said agreement became due, no part of it was paid, and on account of such failure to pay E. W. Chapman elected to consider himself released from all obligations created by such agreement; that by reason thereof said agreement lapsed and became extinguished on said April 6, 1901, and null and void between all the parties thereto; that thereafter and on the 18th or 19th of April, 1901, defendants Weldon and Cayce entered into a new agreement with Chapman for the purchase of a portion of said Los Prietos Rancho for the price of twenty thousand dollars, which Weldon then paid out of his own funds, whereupon a conveyance was executed by said Chapman and the holders of the legal title to said land to said Weldon and Cayce; that H. L. Williams was not a party to the said last-mentioned contract, nor did he contribute any of the purchase price of said land; that prior to April 6, 1901, the defendant Weldon had decided not to do or perform any act further under said agreement of December 6, 1900, did not do so, and considered the same terminated, but, being desirous of making a new agreement for the purchase of said parcel of land, out of abundance of caution, requested said Cayce to secure to himself a transfer from said H. L. Williams of the interest of the latter in said agreement of December 6, 1900; that the defendant Weldon had no notice of the agreement between H. L. Williams and E. S. Cayce until the recordation of said instrument on the 12th of October, 1901, and that the transfer to Weldon of the interest in said land which Cayce acquired therein by the conveyance from Chapman and others was not a fraud upon said H. L. Williams.

The only point involved on this appeal is whether the evidence is sufficient to sustain the findings, the chief claim of appellants being that the principal finding made by the court, that the interest in the Los Prietos Rancho was acquired under a new agreement between Chapman, Weldon, and Cayce of the 18th and 19th of April, and not in consummation of the agreement between Chapman, Weldon, and Williams of December 6, 1900, is not sustained by the evidence. This contention of appellants is based more upon what they claim should have been the proper construction given by the court to the testimony in the case upon the subject rather than upon any real insufficiency of the evidence as it is presented in

the record and actually construed by the court, to support the findings. The only evidence directly bearing upon the matter is the testimony of the defendant Weldon himself. It is admitted by counsel for appellants in their brief, discussing more particularly the finding that Weldon had decided not to do or perform any act under the contract of December, 1900, and considered the same terminated, that there are declarations of Weldon found in his testimony which would well support this finding, but they claim that his testimony, considered as a whole, falsifies his declared intentions in the matter of carrying out said contract. That there is testimony on the part of Weldon not only sustaining this particular finding but all the other findings regarding the abandonment of the old contract and the making of the new one is equally clear from the record, and we do not think it is subject to the criticism which counsel subjects it to. At least, it is not for us to say what credibility the lower court should have given to his testimony. It believed what he said on the subject, and we must construe his testimony as favorably as possible in support of the findings which it tends to sustain.

The testimony of Weldon shows, giving a general résumé of it, because there is no evidence in conflict with it in the record, that prior to the time when the second payment under the contract of December 6, 1900, was about due he wrote to Chapman that he would not make it,—that he relinquished his claims under the contract,—that in fact such payment was not made, either by himself or Williams; that he so notified Chapman because the latter had asked him in case he concluded not to go on under that contract, to notify him to that effect; that he had made up his mind not to go ahead with the contract in conjunction with Williams, for personal reasons satisfactory to himself, and it was on this account that he purposed abandoning the agreement; that subsequent to April 6, 1901, he and Cayce (who seems to have acquired some interest in the contract of December 6, 1900), believing that their rights under the contract of that date had become forfeited, and both having concluded not to have anything further to do under it, the former suggested to Cayce the advisability of getting a new agreement for themselves and Chapman or purchasing the property from him on different terms. This was agreed to. As to the matters connected

with the making of such new agreement, Weldon testified that notwithstanding he and Cayce considered the old contract at an end, and had no further intent of acting under it, still as he (Weldon) had been advised that Williams was a man who would be liable to cause trouble with any business matter with which he had been connected, out of an abundance of caution he deemed it advisable before attempting any new arrangement with Chapman to obtain a relinquishment from Williams of all his interest under the old contract; that he sent Cayce from Santa Barbara to Los Angeles to obtain it; that Cayce returned with a quitclaim deed of such interest to himself, but that he had no actual knowledge at that time, or until January, 1902, of the contract made between Cayce and Williams at the time the former obtained Williams's quitclaim deed; that some days after Cayce returned with the deed from Williams, Weldon went to San Francisco to see Chapman concerning the property; that Weldon considered at that time that the old contract was at an end, and that Williams had no further interest in any dealings concerning the land.  In their negotiations Chapman explicitly stated that the contract of December 6, 1900, had expired through failure to make the second payment under it, that it was at an end, and that he could not do any further business under it; that they then discussed a new deal relative to the property, Weldon informing Chapman that he would not pay twenty-five thousand dollars for the property, and that as he (Chapman) had but a few days to acquire it under his contract with Dean, he would give him twenty thousand dollars for it, which, after considerable discussion, Chapman accepted: that when this agreement was reached Chapman stated, in addition to his previous declarations, that he considered the agreement of December 6, 1900, at an end for non-compliance with its terms, that if he felt under any obligation to Williams in the matter he would not feel at liberty to make the sale to Weldon and Cayce, but that, as he considered the old contract forfeited, he felt that he had a legal right to make the sale, which he accordingly did, making a deed to Williams and Cayce of the property, Weldon paying from his own funds the twenty thousand dollars consideration therefor.

We think this testimony, which was uncontradicted, warranted the court in finding that the purchase of these lands

was not had under the contract of December 6, 1900; that that contract, in as far as any rights which Weldon and Williams had under it, had expired by virtue of its unfulfilled terms relative to the second payment, and the election of Chapman to consider all rights under it terminated and forfeited. Weldon was under no obligation, when the second payment became due, to make it, either for himself or the benefit of Williams. He owed no legal obligation to Williams to perform the contract, and while their default in making such second payment did not relieve them from the right of Chapman to enforce the terms of that contract against them if he saw fit, still if the latter was willing to consider the agreement abrogated, and treat with Weldon on the subject of a new contract between them with reference to the property, there is no rule of law which would preclude himself and Weldon from making it, to the exclusion of Williams from any participation or benefit under it. As time was expressly made the essence of the original agreement, the default of Williams and Weldon in the second payment effectually forfeited all rights under it and Chapman had an absolute legal right to consider it so forfeited. He was not required to give —as the argument of counsel for appellants would seem to indicate he should—notice to Weldon and Williams, upon their default, that as far as their rights were concerned the agreement was terminated. No affirmative action on the part of Chapman was necessary. By force of the terms of the agreement itself, the rights of Weldon and Williams had ended, and he could make any other contract with Weldon for a disposition of the property that he saw fit. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, [55 Pac. 713, 69 Am. St. Rep. 17], and cases therein cited.)

It is insisted, however, by appellants that if it be conceded that the interest in the Los Prietos Rancho was acquired under a new arrangement made by Weldon with Chapman for himself and Cayce, and not under the old agreement, still that, under the contract between Cayce and Williams, made when the quitclaim deed of the latter was executed, Cayce held the interest acquired under the deed from Chapman to himself and Weldon in trust to convey one fourth of the interest he acquired thereunder to Williams, and that the conveyance by him of such interest to Weldon, who took with notice of the

rights of Williams under said contract, was a fraud upon Williams, and that appellants can pursue the funds derived from Cayce's sale of such trust interest into the hands of the bank under a right superior to that of Weldon thereto. We do not think that this contract between Cayce and Williams operated to create a trust, or that notice of its existence affected the right of Weldon in the property acquired under his deed thereto from Cayce. Weldon was not bound by notice of the existence of such agreement between Williams and Cayce, or its terms, any further than appeared in the agreement itself. By such agreement Cayce only agrees to convey to Williams an interest in the property, in the event that the old contract is consummated, and the court found that it never was consummated, but that the land was acquired under an entirely new agreement. The notice imparted to Weldon by the agreement between Cayce and Williams was that of any interest in the property which Cayce might acquire under the old agreement he would convey a quarter to Williams. As the interest which Cayce acquired was not obtained under the old contract, it was no fraud on the right of Williams that Weldon should take a conveyance from Cayce of all his interest in the land. It is insisted that under the contract between Cayce and Williams Cayce covenanted that Weldon and he should make the purchase under the old agreement. We do not think the recital in that agreement amounted to a covenant, or that it imposed any obligation upon Weldon and Cayce to complete the purchase of the land under the old agreement of December 6, 1900. In whatever way the recital may be considered it could not bind Weldon, as he was not a party to it. And if it be treated as an agreement on the part of Cayce, under the evidence in the case, the most that can be said relative to such agreement is that Cayce violated it and became liable to damages for its breach. No trust was imposed under it, nor did it give Williams or his successors any claim to the fund involved here, and to which they only assert claim under the theory of the existence of a trust in the lands in favor of Williams, of which they claim Weldon had notice when he took the deed.

The judgment appealed from is affirmed.

McFarland, J., and Henshaw, J., concurred.

CXLVIII Cal.—39

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.