[S. F. No. 17145. In Bank. Mar. 3, 1947.]

JULIUS NELSON, Appellant, v. ISAAC ABRAHAM, Respondent.

Hardin, Rank, Meltzer & Fletcher for Appellant.

Raymond Salisbury and Joseph C. Prior for Respondent.

SHENK, J.—The plaintiff commenced an action for an accounting, dissolution of partnership, and such other relief as might be proper. The complaint alleged a copartnership between the plaintiff and the defendant in the business of selling ice at wholesale and retail in San Francisco under the name of Independent Ice Company; the sale by the defendant of the business without plaintiff's consent; the existence of a net profit from the operation of the business and from the sale of assets in which the plaintiff was entitled to share; and the defendant's refusal to account. The trial court found that a copartnership did not exist and that the plaintiff was not entitled to any portion of the profits derived from the operation or sale of the business "as copartner or otherwise." The plaintiff appealed from the judgment.

The defendant for a number of years had been engaged in the manufacture and sale at wholesale of ice in the county of Alameda under the name of Independent Ice Company. For six years the plaintiff had been employed by the defendant as an ice salesman. Early in 1940, they talked about opening an office and establishing a sales business in San Francisco. They arrived at an oral agreement which provided, according to the defendant's testimony, that if the plaintiff would conduct the San Francisco business he would receive one-third of the net profits from operation of that business but would not have an interest in the business. Thereupon the plaintiff, with the help of one driver, commenced the sale of ice in San Francisco under the company name. At first the ice for San Francisco deliveries was stored in the Oakland plant and picked up there by the San Francisco trucks, thence delivered directly to the San Francisco customers. Two routes were started in San Francisco. When the number of customers increased and sales justified it, the defendant, in September, 1941, leased a lot in San Francisco and placed upon it a building which was used for storage and office purposes. Thereafter, the plaintiff assumed entire charge of the management and operations in San Francisco, and the deliveries there were

conducted separately from the Oakland business, with a separate set of books, and a separate bank account in which all the receipts were deposited by the plaintiff. Each of the parties could sign checks, but the plaintiff alone signed checks withdrawing moneys from the account. Both parties signed as partners the application for the sales permit issued by the State Board of Equalization. The ice sold in San Francisco was furnished by the defendant's Oakland plant, but the San Francisco business was billed for ice as a customer purchasing from the Oakland plant. It is shown that the profit to the defendant on ''sales'' for San Francisco deliveries was $2,934 for the period involved.

In San Francisco ice was sold to wholesale and retail customers on the routes established by the plaintiff. The plaintiff managed and conducted all of the details of the San Francisco business, including the hiring and discharging of employees, fixing their compensation, and determining the sale price of ice. He selected the customers, made extensions of credit, and performed the other necessary and usual details of management. He continued to draw his wages of $185 a month, less deductions for social security and unemployment benefits. His regular wages constituted an expense of operation and were not intended to be included in the amount of net profits. He did not draw wages for overtime, although he worked twelve to sixteen hours a day in building up the routes, making collections, and in the discharge of other duties of management. The drivers who delivered ice to the San Francisco customers received pay for overtime, thus drawing more in wages than the amount received by the plaintiff. The physical properties employed in the conduct of the business, such as the plant and office building, furniture, trucks, ice equipment, and the money capital, were furnished by the defendant.

Some time in March, 1942, the defendant commenced negotiations for the sale of the San Francisco business to two San Francisco competitors. On March 31, 1942, the sale of the San Francisco storage plant, equipment and routes was consummated without notice to the plaintiff. The consideration received by the defendant was $14,000 cash, five ice routes in Oakland, and a contract on the part of one of the purchasers to buy from the defendant a minimum of 2,500 tons of ice per year for a period of not less than five years. It was shown that the cash consideration alone represented an amount which

was $5,000 in excess of the defendant's capital outlay for the San Francisco business.

On April 7, 1942, one week after the sale, the plaintiff asked the defendant for an accounting and division of profits, but he refused on the ground that the profit and loss statement showed a net operative loss of $2,090 for the period. This action followed.

The question for determination is whether under the admitted agreement the plaintiff is entitled to an accounting and to a division of any profits which may be shown thereby. The question may not be dismissed summarily with the observation that, since the agreement gave the plaintiff a share of the net profits from operation without an interest in the business, and since the books showed no net profit from operation, the plaintiff has furnished no basis for an accounting. The trial court made no finding on the issue of the amount of profit, nor did it find that there was no operative profit. The finding on this issue could not be made without granting the relief prayed for, unless the plaintiff conceded that an accounting would show that there was no net profit from operation. The plaintiff asserts that the evidence does not justify the finding that he is not entitled to an accounting, nor, if an accounting be had, that it would not disclose a profit from operation.

The fact that the complaint is drawn on the theory that the parol agreement between the parties contemplated only a partnership does not prevent the granting of the relief on some other theory based on the facts in evidence. (*Champagne* v. *Passons,* 95 Cal.App. 15, 29 [272 P. 353]; 30 Am.Jur. p. 711.)

A partnership connotes coownership in the partnership property with a sharing in the profits and losses of a continuing business. (*Wheeler* v. *Farmer,* 38 Cal. 203, 213; *Dempsey-Kearns Th. & Motion Picture Enterprises* v. *Pantages,* 91 Cal.App. 677, 682 [267 P. 550]; 40 Am.Jur. p. 145 et seq.; Civ. Code, § 2400.)

A joint venture has no corporate or partnership designation. It is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. (*Hansen* v. *Burford,* 212 Cal. 100, 108-9 [297 P. 908]; *Irer* v. *Gawn,* 99 Cal.App. 17 [277 P. 1053]; *Keyes* v. *Nims,* 43 Cal.App. 1, 9 [184 P. 695].) Such a venture or undertaking may be formed by parol agreement (*Sly* v. *Abbott,* 89 Cal.App. 209, 216 [264 P. 507]), or it may be assumed as a reasonable

deduction from the acts and declarations of the parties (*Swanson* v. *Siem*, 124 Cal.App. 519, 524 [12 P.2d 1053].) For further discussion of the nature of joint ventures see *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 764 [128 P.2d 665]; *Kraemer* v. *World-Wide Trading Co.*, 195 App.Div. 305 [187 N.Y.S. 16]; *Shoemake* v. *Davis*, 146 Kan. 909 [73 P.2d 1043]; see also note, What Amounts to Joint Adventure, 138 A.L.R. 968; note, Joint Adventures, 30 Am. Jur. 676; note, Partnership Distinguished from Employment, 137 A.L.R. 6.

The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner, but the inference is not drawn if the profits were received in payment as wages of an employee (Civ. Code, § 2401, subd. 4.) Whether the agreement to share profits is merely to provide a measure of compensation for services or for the use of money, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute the undertaking a partnership or a joint venture, presents primarily questions of fact. (*Spier* v. *Lang*, 4 Cal.2d 711 [53 P.2d 138].) It has been said to be a "mingled problem of law and fact." (*Swanson* v. *Siem, supra,* 124 Cal.App. 519, 523, citing 20 R.C.L. 849, § 55.)

It is, however, unnecessary to place a precise legal designation on the relationship between the parties. The present controversy is between the parties to a contract by which the plaintiff admittedly became entitled to a one-third share of the net profits from operation without acquiring an interest in the business. The oral agreement and the conduct of the parties thereunder, considering the nature of the undertaking and the surrounding circumstances, define their respective rights, liabilities and duties one to the other without the necessity for designating their relationship by a particular label.

The relationship between copartners, or between joint adventurers, is of a fiduciary character. (14 Cal.Jur. p. 763; *Arnold* v. *Humphreys,* 138 Cal.App. 637, 643 [33 P.2d 67]; *Sly* v. *Abbott, supra,* 89 Cal.App. 209, 216; *Chapman* v. *Dwyer,* 40 F.2d 468.) But it is also true that every contract calls for the highest degree of good faith and honest dealing between the parties. In *Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N.Y. 79 [188 N.E. 163], involving an agreement to share the profits from the production of a play, the

court referred to the fiduciary relationship which had its origin in the contract, and which imposed upon the parties the duty of utmost good faith. The court (at p. 87) recognized the ''principle that in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.'' In *Elliott* v. *Murphy Timber Co.*, 117 Ore. 387 [244 P. 91, 48 A.L.R. 1043], involving an action between the parties to a contract for salary and division of profits, it was said (at p. 393) : ''Whatever their relation may have been, their rights and liabilities rest upon their agreement, and where a contract provides as this does, for payment by one party to another of profits received, it is the duty of the one receiving such profits to account to the other, for otherwise there would be no way by which such party could determine whether there were any profits. . . . When an employer has received profits in which, by the terms of his contract, an employee is entitled to share, it is as much his duty to account to the employee as it would be if the relation of partners or joint adventurers existed between them. 'The right to go into equity for an account is not confined to a partner. Any employee paid by a share of the profits may maintain a bill for an account, though he is not a partner . . .,' '' citing among other authorities Parsons on Partnership (4th ed.), section 54, note 1. It is conceivable that the relationship between parties may be, for one purpose, that of employer and employee, while for another, that of partners or joint adventurers. (See *Wiltsee* v. *California Emp. Com.*, 69 Cal.App.2d 120, 126-9 [158 P.2d 612] ; also discussion 33 Cal.L.Rev., p. 648 et seq.)

█ It must be obvious therefore that under an agreement calling for a division of profits, whether the contract is one of copartnership, joint venture, or employment, good faith and fair dealing require that neither party may be permitted to take an unfair advantage or enjoy greater rights than called for by the terms of the agreement. One may not obtain a secret profit or undue benefit. The one who is entrusted with the rights of another is charged with the duty of guarding those rights with the utmost good faith. (*Stenian* v. *Tashjian*, 178 Cal. 623 [174 P. 883] ; *Fink* v. *Weisman*, 129 Cal.

App. 305 [18 P.2d 961]; *Menefee* v. *Oxnam,* 42 Cal.App. 81 [183 P. 379].)

In the present case the plaintiff was entrusted with the establishment and management of the business in San Francisco, its integrity and expansion. The defendant took no active part in the conduct or management of the San Francisco business. He supplied the capital and was entrusted with the duty of making a fair division of the profits in accordance with the agreement and understanding of the parties. The plaintiff undertook to build up the business in a new and highly competitive field. Something more than mere direction to perform a particular task in return for salary or wages was inherent in the agreement and in the minds of the parties. The establishment of the business entailed more than merely selling merchandise. To establish the ice routes in the new and competitive territory required effort, skill, management and tact beyond the mere delivery of ice over an already established route. That the time and effort expended by the plaintiff in these respects were successful is evidenced by the eagerness of the competitors and the return to the defendant on the sale of the business.

The foregoing observations become pertinent in determining the nature of the relationship of the parties and in defining the correlative rights and duties flowing from a contract which gave to the plaintiff a share in the net profits from operation. The words "net profits of a business" have been defined generally as the difference between the gross receipts from sales of merchandise and the expenses of conducting the business. (*Boradori* v. *Peterson,* 86 Cal.App. 753, 759-760 [261 P. 520].) Notwithstanding this definition there is no warrant for excluding the plaintiff from sharing in the gain arising out of the relationship which the parties have created by their contract.

The profits taken by the defendant on the so-called "sales" of ice for San Francisco deliveries if not a secret profit may, when properly considered, be deemed at least an undue benefit to the defendant, and therefore a profit from operation in which the plaintiff was entitled to share. The amount of such profit to the defendant, added to gross income, insofar as the present record shows, indicates that there was a net operative profit from sales of ice rather than a loss for the period. The amount thereof might become a pertinent item of inquiry in an accounting based on the contract.

Likewise, in any accounting under the agreement, the court may consider what the parties meant by "profits from operation" of the San Francisco business. This is so for the reason that there existed between them an agreement to share those profits. This agreement, the court found, did not create a partnership. As a conclusion from that finding the court determined that plaintiff was not entitled to any portion of the profits derived from the operation or sale of the business "as copartner or otherwise." As we have seen, however, the basic issue in this case is not resolved by a finding that there was no partnership. The plaintiff is entitled to his portion of the profits under the agreement established by the record. The defendant testified that one of his reasons for going into the San Francisco territory was the fact that San Francisco dealers had entered his Oakland territory and taken away the routes which he subsequently received in part payment for the San Francisco operation. This might indicate that the purpose of the San Francisco venture was to create a basis for recovering what the competitors had taken from the defendant.

It was in evidence that the plaintiff, without objection from the defendant, participated in one of the meetings with negotiators for the purchase of the San Francisco business and stated in that meeting that he had an interest in the business. It was also in evidence that one week after the purchase of the business by the competitors a preliminary account of the profits from the sale was shown to the defendant at which time he admitted that the plaintiff was entitled to one-third of the cash consideration after deducting operating expenses and losses.

Therefore, upon proper consideration of all relevant facts, there might appear justification for viewing the San Francisco venture as an "operation," and for concluding that any other sense of that word would render the parties' agreement meaningless.

Considering the relationship which the defendant had assumed toward the plaintiff, and his subsequent conduct, the principles of equity might best be served by treating the San Francisco business, including the building of the routes and the sale, as an "operation." To that end the defendant should not be permitted to say that he intended to profit from the plaintiff's labor and at the same time deprive the plaintiff of the fruits of the agreement. (See *Butler* v. *Union*

*Trust Co.,* 178 Cal. 195 [172 P. 601]; *Champagne* v. *Passons, supra,* 95 Cal.App. 15, 28.)

The conclusion of the trial court that the plaintiff is not entitled to an accounting or to profits is not supported by the record.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.