Filed 12/10/13  Earl Fraser Construction Co. v. Wesco Homes and Development CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| EARL FRASER CONSTRUCTION, INC., | |
| Plaintiff and Appellant, | E055318 |
| v. | (Super.Ct.No. CIVSS804406) |
| WESCO HOMES AND DEVELOPMENT, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Hanke & Williams and Rick D. Williams for Plaintiff and Appellant.

Gresham Savage Nolan & Tilden, J. Michael Summerour and Stefanie G. Field for Defendant and Respondent.

Plaintiff Earl Fraser, owner of Fraser Construction, Inc. (Fraser), subcontracted with Elsinore Homes, Inc. (Elsinore), to provide sewer, water, and storm drains on a 33-home project called Wildomar Ranches II, LLC (Wildomar) for $1,033,904.36.  Some

1

back charges were incurred when Fraser fell behind schedule, forcing Wesco Homes & Development, Inc. (Wesco), the managing member of Wildomar, to hire other contractors to stay on schedule. After Fraser completed its work, all but $29,365 was paid. Fraser sued Elsinore and Wesco for the unpaid balance plus attorney's fees. Elsinore settled for $70,000 for the unpaid balance plus interest and litigation fees and costs, but Wesco proceeded to trial. After a bench trial, the court ruled in favor of Wesco. Fraser appeals.

On appeal, Fraser claims: (1) The court erroneously concluded that he had not pled a partnership or joint venture theory where the complaint included an agency allegation that included the term "Co-Venturer;" (2) Wildomar was a partially disclosed principal for which both its members were liable to Fraser for damages; and (3) The statute of limitations does not preclude a finding of liability as to Wesco. We affirm.

## BACKGROUND

Wildomar was formed as a limited liability company on February 26, 2004, to purchase and develop a 33-home subdivision in Wildomar, California. The limited liability company comprised two members: Wesco and Elsinore Homes, Inc. (Elsinore). Under the operating agreement of Wildomar, Wesco served as manager. As the managing member, Wesco provided construction management services on the project through its project manager Jeff Morstein. Morstein's duties required him to act as purchasing agent, compile bids, reconcile them and get them ready for approval, and oversee the management. As purchasing agent, Morstein procured the subcontracts to build the project. Jim Diaz, an employee of Elsinore, acted as superintendent, doing

2

inspections, reviewing the quality of the work on a daily basis, and acting as an overseer. During the course of construction, Fraser dealt with Diaz.

In connection with the Wildomar project, Wildomar entered into a development agreement with Elsinore, whereby Elsinore agreed to act as general contractor for the project. Pursuant to the development agreement, Wildomar was bound to pay the expenses of any subcontractors. As project manager, Morstein solicited bids, hired subcontractors, worked with engineers and architects, dealt with the municipality in getting plans approved, and supervised construction.

Morstein was responsible for procuring a subcontractor for the sewer, water and storm drains. Fraser was recommended to Morstein by someone who declined to bid on the job. Fraser held a Class A contractor's license, a general engineering license which allows one to construct infrastructure outside the building parameters. Morstein called Fraser and asked him if he was interested in bidding on the job. Fraser submitted a proposal to Morstein to perform the work for $889,811. Morstein negotiated and approved the proposal and a subcontract was sent from Wesco to Fraser for signature.

The subcontract agreement, dated December 9, 2005, named Wildomar as owner, Elsinore as the general contractor, and Fraser as the subcontractor who agreed to install the sewer, water and storm drains for the project known as the Ranches II. The subcontract agreement was executed by Fraser as subcontractor, and by Wes Keusder, President of Elsinore, as the contractor. On January 17, 2007, a change order was negotiated due to changes in the scope of the work to be done by Fraser. The change order, approved by Morstein, resulted in an agreement to pay an additional $111,877.36

3

to Fraser, for a total amount of $1,033,904.36. The change order was submitted to Elsinore. A payment schedule was included in the subcontract allowing Fraser to bill in stages.

During the course of construction, Fraser submitted bills to Wesco on forms provided by Wesco. Morstein would approve payments in the field and forward them to the office for final approval. Between July 2006 and May 2007, payments were made to Fraser by checks written on the bank account of Wildomar.

In May, 2006, Fraser fell behind schedule because the job was not properly manned. In October 2006, Morstein sent a letter to Fraser regarding unsafe practices on the construction site. The letter accompanied a back charge for the expense of hiring another contractor to perform repair and replacement work, which was approved by Morstein, and the hiring of Colich Construction, L.P., for additional manpower to get the work done on time so they could open models.

On January 29, 2007, the Notice of Backcharge sought recovery of $69,211.60, to cover the additional expenses attributed to Fraser. When he received the notice of backcharge, Fraser called Morstein to dispute some of the charges. On February 7, 2007, the amount was revised downward, to $48,528.78, which would be deducted from the contract amount. The balance due to Fraser under the contract was $29,365 plus interest.

On April 7, 2008, Fraser filed a complaint for breach of contract against Elsinore and Wesco, seeking recover of $125,320.15. Following Wesco's successful demurrer, an amended complaint was filed on August 13, 2008. The amended complaint included an attachment alleging that Wesco was a developer, engaged in the business of construction

4

for the project, The Ranches II; that Wesco acted as the employee and/or agent of one or more of the defendants; that Wesco's actions were ratified by the defendants; and that "at all times mentioned herein, each of the Defendants was the agent, servant, employee, and co-venturer of each of the remaining Defendants, and was at all times herein mentioned, acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, and joint venture."

On February 24, 2010, Elsinore entered into a settlement agreement by which it agreed to pay Fraser $70,000 in return for its dismissal.[1] After competing motions for summary judgment by both Wesco and Fraser were respectively denied, the matter proceeded to trial.

The case was tried by the court without a jury. The parties stipulated to certain matters:

(1) On February 26, 2004, Elsinore and Wesco created an agreement for Wildomar.

(2) Wildomar is a limited liability company pursuant to Corporations Code section 7100.

(3) Wildomar has two members, Elsinore and Wesco.

(4) Per Wildomar's operating agreement, Wesco is the managing member.

---

[1] The recitals of the settlement agreement indicate that $77,894.03 was owed to Fraser under the contract, less back charges totaling $48,528.78, leaving a balance of $29,365.25, plus interest, litigation fees and costs.

(5) Wildomar was created to develop a 33-home construction project, known as "The Ranches II."

(6) Wildomar entered into a development agreement with Elsinore on February 28, 2006, for construction of the project.

(7) Elsinore is a licensed contractor.

(8) On December 9, 2005, Elsinore entered into a subcontract agreement with Fraser to install sewer, water and storm drains for the project.

(9) Wesco was not a signatory to the subcontract.

(10) Fraser installed the sewer, water and storm drains.

(11) Under the subcontract agreement, Fraser was paid $889,811 for work.

(12) Authorized change orders of $114,093.36 brought the subcontract amount to $1,033,904.36.

(13) $956,010.33 was paid under the subcontract.

(14) All payments made to Fraser were made by checks drawn from the bank account of Wildomar.

(15) Certain payments were made to Fraser between July 13, 2006, and September 23, 2008, totaling $931,787.91.

(16) There were agreed back charges to be deducted from the total owed Fraser in the amount of $48,528.

(17) As of September 23, 2008, the balance owed on the subcontract was $29,365.25.

At the conclusion of trial, the parties submitted oral argument in writing and the matter was submitted. On May 31, 2011, the court ruled in favor of Wesco, and issued a statement of decision. The court's reasoning was that Wesco was not a party to the subcontract; that Wesco was the construction manager of Wildomar pursuant to section 6.5 of the operating agreement, and there was substantial evidence presented that Earl Fraser knew or should have known that the subcontract was between his company and Elsinore. The court also found that Wesco was not liable on an agency theory because the principal, Elsinore, was clearly disclosed at the time of the subcontract, and the subcontract did not mention that Wesco shall be held liable as an agent. Further, the court concluded that Wesco could not be held liable under any partnership or joint venture theories because those theories were not pled, Wildomar is a limited liability company, and because of the statute of limitations.

Fraser timely appealed.

## DISCUSSION

Fraser's assignments of error attack findings made by the trial court in ruling for the defendant. "'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [italics in original]; *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.* (2012) 204 Cal.App.4th 1214, 1222.) We resolve all conflicts in favor of the prevailing party and we indulge all legitimate and reasonable inferences to uphold the

7

verdict if possible. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 527.) We have no power to judge the effect or value of the evidence, to weigh the evidence, consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766, quoting *Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

We will address Fraser's claims separately.

1.      ***The Standard Agency Paragraph Did Not Allege Liability Under a Partnership or Joint Venture Theory and Fraser Failed to Prove a Partnership or Joint Venture.***

Fraser asserts the trial court erroneously concluded he failed to plead partnership or joint venture theories of liability. Specifically, he points to the agency allegation included in his amended complaint which states that each defendant was the agent, servant, employee, and coventurer of each of the remaining defendants. Fraser asserts this paragraph satisfies the necessary pleading requirement to establish liability on the basis of a partnership. We disagree.

On its face, the first amended complaint alleged that each of the named defendants was a separate corporation, that Fraser entered into a contract with Elsinore Homes and Wesco, and that defendant breached the agreement by failing to pay Fraser the balance due and owing under the contract in the amount of $125,320.15.[2] The pleading did not

---

[2] On May 18, 2007, Fraser sent a demand letter to Wesco, seeking the same amount, but at trial the parties stipulated that as of September 23, 2008, a balance of $29,365.25 remained unpaid.

8

allege that Wesco and Elsinore were partners or that Wildomar was either a partnership or a joint venture, and did not allege that the construction subcontract was part of a joint venture. More importantly, whether or not the court found such a theory properly pled, Fraser failed to introduce any proof of a partnership or joint venture for which the inclusion of the standardized agency allegation would provide a basis for finding Wesco liable.

A general allegation that defendants were agents, employees, servants, or joint venturers of or with their codefendants is a sufficient allegation of actual agency to withstand a general demurrer. (*Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376; *Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 178-179.) An agency allegation is required to invoke the doctrine of respondeat superior in a pleading. (5 Witkin, Cal. Procedure (5th ed., 2008) Pleading, § 919, p. 333.)

Alleging a variety of different agency relationships that could support secondary liability is permitted when a plaintiff is uncertain as to which one or more of the several forms of agency will be proved at trial. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 182, fn. 27 [dis. opn. Mosk, J.].) While a general allegation is sufficient as against a demurrer, a demurrer tests the pleading alone and does not determine whether the facts stated are true or untrue: that is the ultimate question to be determined by evidence upon a trial of the questions of fact. (*Garton v. Title Ins. & Trust Co., supra,* 106 Cal.App.3d at p. 375; *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299 [employee/employer]; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 129 [employee/employer].)

9

Fraser argues that for purposes of pleading, the terms "co-venturer" and "joint venturer" are synonymous with the term "partnership." He acknowledges that the word "partnership" is not specifically pled. Nevertheless, this case is past the pleading stage, and Fraser did not introduce evidence of either a partnership or a joint venture between Wesco and Elsinore.

A partnership connotes coownership in the partnership property with a sharing in the profits and losses of a continuing business. (*Chambers v. Kay* (2002) 29 Cal.4th 142, 150-151, citing *Nelson v. Abraham* (1947) 29 Cal.2d 745, 749.) Each partner is an agent of the partnership for the purpose of partnership business. (*Elias Real Estate, LLC v. Tseng* (2007) 156 Cal.App.4th 425, 431-432.) Partners are jointly liable on contracts. (9 Witkin, Summary of Cal. Law (10th ed., 2005), Partnership, § 38, p. 613.) However, the existence of a partnership is a question of fact. (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1157.) A partnership does not continue to exist after the formation of a corporation. (*Ibid.*) In stipulating that Wildomar was a limited liability corporation, comprising two members, Elsinore and Wesco, Fraser agreed there was no partnership. The court made its finding based on the parties' stipulation and we are bound by that finding if it is supported by substantial evidence. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 113-114.)

The rights and liabilities of joint venturers, *inter se*, are governed by principles similar to those applicable to partnerships. (*Mashon v. Haddock* (1961) 190 Cal.App.2d 151, 165-166.) The existence of a joint venture, like that of a partnership, is a question of fact. (*Mercado v. Hoefler* (1961) 190 Cal.App.2d 12, 17.) Notwithstanding any

10

averments of agency in Fraser's complaint, the trial court's determination, based on the parties' stipulation, that Wildomar was a limited liability company is binding upon us, especially where Fraser stipulated to that fact.

Fraser's recitation of the standard agency allegation in his amended complaint did not satisfactorily plead a theory of partnership liability. The only cause of action pled is one for breach of contract, and the contract named only two parties. Because he omitted any allegation that Elsinore and Wesco were partners or members of a joint venture, and did not name Wildomar in the complaint at all, the trial court was correct in stating that Fraser had not pled a partnership or joint venture theory of liability. Naming Wesco in the complaint did not create any contract obligations on its part.

Even if Fraser had properly pled Wesco's liability under a partnership or joint venture theory, he failed to prove the existence of a partnership or joint venture and even stipulated that Wesco and Elsinore were members in a limited liability company. (See *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 655 [plaintiff's failure to plead clearly did not reduce her burden of proving that the contract intended to allocate to her profits from post-divorce projects].) Whatever the relationship between Elsinore, Wesco, and Wildomar may have been, their respective rights and liabilities rested upon their agreement. (*Nelson v. Abraham* (1947) 29 Cal.2d 745, 751, citing *Wiltsee v. California Emp. Com.* (1945) 69 Cal.App.2d 120, 126-129.)

The agreement in this case was incorporated into the amended complaint, and admitted into evidence by stipulation. Fraser also stipulated that Elsinore and Wesco formed a limited liability company, Wildomar and the operating agreement of Wildomar

11

was admitted into evidence as a joint exhibit by Fraser and Wesco. The stipulated facts and the joint exhibits establishing the true nature of the relationship between Wesco and Elsinore negates any allegation in the amended complaint that they were partners or that they were engaged in a joint venture.

In any event, Fraser's assertion that the trial court incorrectly concluded he failed to plead a partnership theory of liability is irrelevant at this stage of the proceedings, because we review only the judgment, not the reasons for it. "There is perhaps no rule of review more firmly established than the principle that a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the trial court to its conclusion." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; *Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 661, citing *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568.)

Whether or not a partnership theory was pled, the court properly found that Wildomar was a limited liability company. There is substantial evidence to support the court's finding that Wesco was the construction manager of Wildomar pursuant to section 6.5 of the operating agreement of the limited liability company, and that Wesco was not a party to the subcontract.[3]

---

[3] Fraser himself presented additional testimony on these points by presenting testimony from the President of Elsinore and the project manager of Wesco who were called as adverse witnesses pursuant to Evidence Code section 776.

The court's finding that Wesco is not liable on an agency theory because the principal (Elsinore) was clearly disclosed at the time of the making of the contract is also supported by substantial evidence. Whether or not the court agreed with Wesco's assertion that Fraser failed to plead partnership or joint venture theories does not compel a reversal in the face of stipulated facts establishing Wesco was entitled to judgment.

2. ***Wildomar Was Not a Partially Disclosed Principal For Which Its Members Were Liable to Fraser For Damages.***

Fraser contends that the court erroneously concluded that the issue of concealment was not well taken. He asserts that the concealment issue was directed at Wildomar as a partially disclosed principal for which its members were both liable to him for damages. We disagree.

The statement of decision simply states that because Fraser admitted that the subcontract was between his company and Elsinore, and because Elsinore "was BOLDLY identified in the Subcontract," any issue of concealment was not well taken. The record supports this conclusion. We construe Fraser's argument as a challenge to the sufficiency of the evidence to support the court's finding that there was no partially disclosed principal. There is substantial evidence to support the court's findings.

Although Fraser negotiated with the project manager of Wesco prior to entering into the contract and testified he thought Wesco was a party to the agreement, he did not allege in his complaint or offer any evidence at trial to support a claim that Wildomar, or any other party, was an undisclosed or partially disclosed principal to the subcontract or allege any cause of action against Wildomar on such a theory.

13

When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, the principal and the third party are parties to the contract, but the agent is not a party to the contract unless the agent and third party agree otherwise. (Rest.3d Agency, § 6.01.) A contract made in the name of an agent may be enforced against an undisclosed principal and extrinsic evidence is admissible to identify the principal. (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 773.)

A person purporting to make a contract with another for a partially disclosed principal is a party to the contract. (*G.W. Andersen Constr. Co. v. Mars Sales* (1985) 164 Cal.App.3d 326, 331.) An agent who makes a contract on behalf of an undisclosed or partially disclosed principal is a party to the contract and responsible for its performance; that person or entity is liable as a party. (*Id.* at p. 333 [individual contracting with plaintiff was liable for breach of contract notwithstanding partially disclosed principal].) If the agent is separately liable, the satisfaction of a judgment against the agent terminates the liability of the principal. (Rest.3d Agency, § 6.09(2); *Clifton Cattle Co. v. Thompson* (1974) 43 Cal.App.3d 11, 16.) The existence of an agency is a question of fact for the trial court. (*Metropolitan Life Ins. Co. v. State Bd. of Equalization* (1982) 32 Cal.3d 649, 658; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1124.)

Elsinore and Fraser were the only parties to the subcontract, although the agreement clearly named Wildomar as the owner of the project. Fraser did not allege in the complaint that Elsinore acted as an agent of Wildomar, or that Wesco was an agent of Wildomar. In fact, Wildomar was not named in the amended complaint so any discussion of partially disclosed principals is purely academic. Even if Wildomar had

14

been a principal to the subcontract agreement between Fraser and Elsinore, Wildomar might have been liable as a party (if it were not for its status as a limited liability company), but this would not extend to Wesco. Any theory relying on a principal/agent relationship between Wildomar and Elsinore was waived. The trial court's finding that there was no concealment is supported by substantial evidence.

Further, even if some theory tying Wesco to the subcontract as an agent for Wildomar had been alleged or proven, Elsinore's settlement with Fraser operated to terminate liability of any principal. (Rest. 3d Agency, § 6.07(3); *Clifton Cattle Co. v. Thompson, supra,* 43 Cal.App.3d at p. 16.) Having determined that Wesco was not liable to Fraser under the subcontract, we do not reach the Fraser's argument that the statute of limitations did not preclude a finding of liability as to Wesco.

## DISPOSITION

The judgment is affirmed. Wesco is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ         

P. J.

We concur:

HOLLENHORST     

          J.

KING          

          J.