[Civ. No. 12767.   First Dist., Div. One.   May 7, 1945.]

E. A. WILTSEE, Respondent, v. CALIFORNIA EMPLOY-
MENT COMMISSION, Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Appellant.

Joseph C. Meyerstein for Respondent.

PETERS, P. J.—The California Employment Commission, after a hearing, determined that E. A. Wiltsee was subject to certain assessments under the Unemployment Insurance Act. (Stats. 1935, p. 1226, as amended; Deering's Gen. Laws, Act 8780d.) Wiltsee paid the assessments under protest, and brought this action as permitted by § 45.10 of the act, to recover the amounts so paid. The superior court determined that Wiltsee was not subject to the assessments and granted him a refund. From this judgment the commission appeals.

Section 6.5 of the act provides that "employment" means "service, including service, in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied." Section 8.5 defines "employing unit" as "any individual or type of organization, including any partnership, association, . . . which has, or subsequent to January 1, 1936, had, in its employ one or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this act."

Section 9(a), since 1937, has defined "employer" as "Any employing unit, which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, has within the current calendar year or had within the preceding calen-

dar year in employment four or more individuals, irrespective of whether the same individuals are or were employed in each such day; provided, that prior to January 1, 1938, employer means any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, has within the current calendar year or had within the preceding calendar year in employment eight or more individuals, irrespective of whether the same individuals are or were employed in each such day.''

The facts are not in dispute. Wiltsee engages in various mining operations. One such operation in which he at least has an interest is the Hoosier Gulch Placers. It is admitted that if Hoosier Gulch Placers be considered as an employing unit separate from the other individual operations of Wiltsee that not. a sufficient number of employees for a sufficient period of time were hired by Wiltsee in connection with these separate activities to bring him within sections 8.5 and 9(a) above quoted. It is also conceded that the Hoosier Gulch Placers hired a sufficient number of employees for a sufficient period of time during the period here involved (April 1, 1937, to March 31, 1941) to render it an employing unit under section 9(a), and that that enterprise has paid all contributions required of it under the act. No contributions were originally paid by Wiltsee based upon his individual activities other than the Hoosier Gulch Placers. The commission found that the Hoosier Gulch Placers was an individual operation of Wiltsee and therefore that that activity and his other individual operations should be grouped together under section 8.5 of the act so as to constitute one employing unit. An assessment was thereupon levied against Wiltsee, the amount of which is not in dispute, based upon his employer activities in his operations other than Hoosier Gulch Placers. This assessment was paid under protest. The superior court determined that the Hoosier Gulch Placers was a separate employing unit from Wiltsee as an individual, and ordered a refund of the assessment insofar as it included contributions based on the individual activities of Wiltsee other than Hoosier Gulch Placers. The sole question presented on this appeal is whether Hoosier Gulch Placers is an individual operation of Wiltsee, as found by the commission, or whether, as found by the trial court, it is a separate employing unit of which Wiltsee is not the sole operator.

The action was tried on the record produced before the commission. That record shows that Wiltsee filed a certificate of doing business under a fictitious name in which he declared that he was the sole owner and proprietor of the Hoosier Gulch Placers. The returns filed with the Department of Employment declared that the operation was Wiltsee's individual enterprise. Wiltsee claims, however, that the Hoosier Gulch Placers is an employing unit separate from his other individual enterprises because of a certain contract dated November 5, 1936, between Wiltsee and one Merrill Yost. It is the theory of Wiltsee that this contract made Yost not only his employee but also a joint adventurer, and that for that reason the enterprise was not solely operated by Wiltsee. This contention is based on the fact that although the contract admittedly made Yost an employee of Wiltsee, it also provided that Yost was to have a nonterminable interest in 25 per cent of the net profits of the operation after the return of Wiltsee's original investment. It was the theory of the trial court that this interest of Yost created a relationship in the nature of a joint venture between Yost and Wiltsee so far as the Unemployment Insurance Act is concerned. Since Yost has no such interest in any of the other of Wiltsee's operations, the trial court concluded that Hoosier Gulch Placers constituted a separate employing unit, and that the assessments levied against Wiltsee which failed to so treat it were erroneous.

The contract recites that Wiltsee "has engaged or is about to engage in a gold dredging operation on . . . the Hoosier Gulch property, and intends to carry on the said project under the name of Hoosier Gulch Placers"; that Yost had been instrumental in discovering the gold dredging possibilities of the project; that Yost "has been and intends to continue in the employ of the said E. A. Wiltsee for the purpose of locating gold dredging and other mining property and assisting the said E. A. Wiltsee with the operation" of the properties. It then provides as follows:

"1. E. A. Wiltsee agrees to employ the said Merrill Yost and the said Merrill Yost agrees to serve the said E. A. Wiltsee in the location of gold dredging and other mining property and assisting the said E. A. Wiltsee in the operation of the said Hoosier Gulch property, and other mining properties, and in the performance of such other duties which may be assigned to him by the said E. A. Wiltsee, at a monthly salary of

$210.00, and such other additional compensation as herein provided for.

"2. During the continuation of the said employment the said Merrill Yost agrees to faithfully, skillfully and satisfactorily discharge his duties in the location of gold dredging and other mining properties and in assisting the said E. A. Wiltsee in the operation of the said Hoosier Gulch Placers, and to devote his full time and attention to such business.

"3. The said E. A. Wiltsee further agrees to pay the said Merrill Yost and Mary Yost, his wife, jointly, or the survivor of them, a sum equal to twenty-five (25%) per cent. of the net profits made by the said E. A. Wiltsee in the operation of the said Hoosier Gulch Placers, after the return to the said E. A. Wiltsee of all money by him invested therein.

"4. Nothing in this agreement shall be construed or deemed to constitute the parties hereto partners to any extent, but on the contrary, it is expressly understood and agreed that the said parties are not partners and that the said Merrill Yost is in no event to bear any part of the losses of the said business, and the said Merrill Yost has not, and in no event is to have, any interest in said business or the profits thereof; that the provision for the payment to the said Merrill Yost and Mary Yost of a sum equal to twenty-five (25%) per cent. of the net profits of the said business after the return to the said E. A. Wiltsee of his investment therein, is adopted merely as a convenient method of computing the compensation of the said Merrill Yost.

"5. The term of this agreement shall be seven (7) years, from and after the date hereof, provided, however, that the same shall terminate in the event of the death or permanent disability of the said Merrill Yost, and provided further that the said agreement may be terminated at the option of the said E. A. Wiltsee in the event of the illness or disability of the said Merrill Yost for any period in excess of two months, or in the event of a bona fide sale by the said E. A. Wiltsee of the said business known as the Hoosier Gulch Placers, or the bona fide discontinuance of the said business by the said E. A. Wiltsee because of its unprofitableness.

"6. Provided, further, that the right of the said Merrill Yost or Mary Yost, or the survivor of them, to receive twenty-five (25%) per cent. of the net profits of the business known as the Hoosier Gulch Placers, after the return to the said E. A. Wiltsee of all money by him invested therein, shall not be affected by the termination of this agreement as long as the

said Hoosier Gulch Placers shall be operated by the said E. A. Wiltsee or his estate, nor by a sale of the said business, and in the event of said sale said Merrill Yost and Mary Yost, his wife, or the survivor of them, shall be entitled to receive out of the net profits realized twenty-five per cent (25) after the return of all money invested by said Wiltsee therein.

"7. The monthly salary hereinabove provided shall be paid to the said Merrill Yost at the end of each calendar month. The sum equal to twenty-five (25%) per cent. of the net profits of the said business shall be paid to the said Merrill Yost and Mary Yost, at the end of each calendar month after the return to the said E. A. Wiltsee of his investment therein, as long as the said business shall be operated by the said E. A. Wiltsee or his estate.

"8. It is expressly understood that there is no understanding or arrangement between the parties other than that herein set forth, and that no representations have been made by the said E. A. Wiltsee which have not been herein expressly stated, and it is further understood and agreed that this agreement cannot be annulled, modified or changed as against the said E. A. Wiltsee except by an agreement in writing executed by both parties hereto."

It is admitted that this contract correctly represented the true relationship existing between the parties.

There can be no doubt but that this contract created an employer-employee relationship between the parties, and did not create a partnership. (Lab. Code, § 2750; *Crowley* v. *Genesee Mining Co.*, 55 Cal. 273; *Wheeler* v. *West*, 71 Cal. 126 [11 P. 871]; *Hudepohl* v. *Liberty Hill Con. Min. & Water Co.*, 80 Cal. 553 [22 P. 339]; *Stone* v. *Bancroft*, 112 Cal. 652 [44 P. 1069]; *Empire Star Mines Co.* v. *California Employment Com.*, ▌(Cal.App.) [158 P.2d 606].) This is conceded by respondent. It is his theory that in addition to the employer-employee relationship the contract for the purposes of this act makes Hoosier Gulch Placers "an operation in the nature of a joint venture between respondent and Yost, hence a different employing unit . . . from any other operation conducted by respondent as an individual." In order to reach this conclusion respondent construes the contract as one by which he first employed Yost, and then granted him a vested interest

in the profits of the venture. Respondent states: "It is the character of this interest of Yost in the venture, as defined in the said agreement, that raises Yost to a position impressively superior to that of an employee, and imparts to the relationship between respondent and Yost the quality of a joint adventure." Respondent concedes, as he must, that the interest in the profits unconnected with any power of control, does not make Yost a joint adventurer within the meaning of those terms as usually defined. (See *Beck* v. *Cagle*, 46 Cal.App.2d 152 [115 P.2d 613]; *Larson* v. *Lewis-Simas-Jones Co.*, 29 Cal. App.2d 83 [84 P.2d 296]; *Enos* v. *Picacho Gold Min. Co.*, 56 Cal.App.2d 765 [133 P.2d 664]; *United Farmers Assn.* v. *Sakiota*, 7 Cal.App.2d 559 [46 P.2d 770].) It is his theory that this is a tax statute; that for tax purposes a relationship may constitute a joint venture without meeting the tests of such a relationship in other fields of the law; that legally the relationship of employer-employee and joint adventurers may exist between the same parties in relation to the same transaction.

Respondent is in error in contending that this statute should be construed as a taxing statute, and should be construed strictly in favor of the taxpayer. In the quite recent case of *California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624, 630 [154 P.2d 892], the Supreme Court defined the nature of the act and the proper rule of construction as follows: "The tax feature as to the reciprocal contributions of employers and their employees is but an incident, not the essence of the state unemployment insurance law, which in turn is integrated with the operation of comparable federal legislation. (*Gillum* v. *Johnson*, 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595].) Such legislation is remedial in character, subject to a liberal construction to effectuate its purpose and to coincide with its reflection of public policy. (*County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634 [122 P.2d 526]; *California Employment Com.* v. *Black-Foxe Military Inst.*, 43 Cal.App.2dSupp. 868 [110 P.2d 729].) In the latter case the broad coverage intent of the act here involved is recognized in the following language at page 872: 'The income tax law is purely a revenue measure, and upon the rule of strict construction applied to such laws, its scope may well be restrained to such matters as are clearly covered by it. Here we have a statute which, while it requires a "contribution" that in itself may possibly be regarded as a tax, has a much

broader object than the mere raising of revenue. It sets up a scheme for ameliorating the hardships of unemployment, and undertakes, in conjunction with the United States Government, to pay unemployment benefits to those who, without fault of their own, are out of work, to impose the financial burden of doing this upon both employers and employees, and to measure both burden and benefits by the amount of compensation paid to employees when they are working. . . . *In view of the purpose of these provisions they should not be whittled down by narrow construction, nor should exceptions not clearly justified by their language be engrafted upon them by judicial interpretation.'* " (Italics the court's.) (See, also, *California Emp. etc. Com.* v. *Lewis,* 68 Cal.App.2d 552 [157 P.2d 38] ; *California Emp. Com.* v. *Los Angeles etc. News Corp.,* 24 Cal.2d 421 [150 P.2d 186]; see, also, *Carroll* v. *Social Security Board,* 128 F.2d 876; *United States* v. *Vogue, Inc.,* 145 F.2d 609.)

There is also substantial authority to the effect that the relationships of employer-employee and joint adventurers are incompatible and cannot exist together between the same parties in relation to the same transaction. (*Larson* v. *Lewis-Simas-Jones Co.,* 29 Cal.App.2d 83 [84 P.2d 296] ; see, note, 138 A.L.R. 968, at p. 992 et seq.)

When these rules are applied to the contract here under discussion there can be no doubt at all but that Yost was not engaged in any joint venture with respondent in relation to the Hoosier Gulch properties. The contract describes the relationship as that of employer-employee, and respondent concedes that this relationship was created. Paragraph 1 of the agreement specifies Yost's compensation as $210 per month ''and such other additional compensation as herein provided for.'' This ''additional compensation'' is set forth in paragraph 3 as 25 per cent of the net profits after a return of Wiltsee's investment. Paragraph 4 provides that nothing in the agreement shall be construed to constitute ''the parties hereto partners to any extent,'' it being expressly understood that Yost was in no event to bear any part of the losses and Yost ''in no event is to have, any interest in said business or the profits thereof,'' and it was expressly provided that the provision as to the 25 per cent profits was ''adopted merely as a convenient method of computing the compensation'' of Yost. It is true that paragraph 6 provides that the right to

25 per cent of the profits should not be affected by Yost's employment being terminated or by the death of Wiltsee or by the sale of the properties, but that provision did not convert the employment agreement into a joint venture. As clearly as words can express their intent the parties stated that this 25 per cent interest in the profits was additional compensation. It was in the nature of a bonus offered Yost for past services and for signing the contract of employment. The essential elements of a joint adventure are lacking. There was no community of interest in the object of the undertaking. Yost had no power at all to control or direct the conduct of respondent in relation to the enterprise. Yost was exempted from sharing any losses. There was no close or fiduciary relationship between the parties.

If the mere right to a share of the profits as defined in this agreement should be held to make this operation a separate employing unit within the meaning of the Unemployment Insurance Act and to create the anomalous relationship of employer-employee-joint adventurers, it would open up the door to easy evasion of the statute. Obviously, if respondent's contention is correct, any employer engaged in several activities, in none of which four persons are employed under circumstances defined in section 9(a) of the act, could completely avoid the provisions of the statute by giving to one or more of his employees a small right to share in the profits as defined in this agreement. Such construction would permit the beneficent purposes of the statute to be defeated.

Respondent emphasizes that the federal and state governments for income tax purposes treat the Hoosier Gulch Placers as a partnership. The propriety of defining an association as a partnership for tax purposes when all the elements of a partnership for other purposes are not present is well settled. (*Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U.S. 110 [46 S.Ct. 48, 70 L.Ed. 183]; *Morrissey* v. *Commissioner,* 296 U.S. 344 [56 S.Ct. 289, 80 L.Ed. 263]; *Swanson* v. *Commissioner,* 296 U.S. 362 [56 S.Ct. 283, 80 L.Ed. 273].) We are not here considering the statutory definitions of "partnership" found in the taxing statutes in question. We are here considering the definition of "employing unit" as those terms are used in sections 8.5 and 9(a) of this statute. Admittedly, the agreement here under consideration did not create a partnership "to any extent." The fact that the federal and state governments for other purposes have defined the relationship here

as a "partnership" for income tax purposes is a false factor.

Respondent places some reliance on such cases as *Elliott* v. *Murphy Timber Co.*, 117 Ore. 387 [244 P. 91, 48 A.L.R. 1043], and *Palmer* v. *Crafts*, 16 Cal.App.2d 370 [60 P.2d 533], as establishing the point that in specific instances for specific purposes a joint adventure may exist although the agreements involved lacked one or more of the elements usually considered as essential to establish that relationship. That principle may readily be conceded. No useful purpose would be served by reciting the facts of those cases in detail. Suffice it to say that the agreements there involved were substantially and fundamentally different from the one here under consideration. We are here dealing with the Unemployment Insurance Act, and with a contract that created only the employer-employee relationship and nothing else.

It is apparent that the conclusion of law that Hoosier Gulch Placers is an employing unit separate from respondent as an individual is unsound, and that the judgment based thereon must be reversed. It is so ordered.

Knight, J., and Ward, J., concurred.