2012 CO 15

**COLORADO DIVISION OF EMPLOYMENT AND TRAINING, Petitioner**

v.

**ACCORD HUMAN RESOURCES, INC. and Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 10SC419.

Supreme Court of Colorado, En Banc.

Feb. 27, 2012.

John W. Suthers, Attorney General, Katie Allison, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Rothgerber Johnson & Lyons LLP, Thomas M. Rogers, III, Jaclyn K. Casey, Denver, Colorado, The Nugent Law Firm, P.C., Brian M. Nugent, Fort Collins, Colorado, Attorneys for Respondents.

Bryan Cave HRO, Donald K. Bain, Denver, Colorado, Attorneys for Amicus Curiae Denver Metro Chamber of Commerce.

Justice EID delivered the Opinion of the Court.

¶1 Petitioner Accord Human Resources, Inc. ("Accord HR") is a professional employer organization that transacts business in Colorado along with four related entities. In 2004, Accord HR transferred a portion of its Colorado employees to another Accord entity with a lower unemployment tax rate and, in doing so, reduced its unemployment tax burden. Subsequently, the Colorado Division of Employment and Training ("Division") determined that, pursuant to section 8–70–114(1), C.R.S. (2011), it had authority to treat the

various Accord entities as one entity for purposes of assessing unemployment taxes, thus erasing any tax advantage that could be gained through the employee transfer. Under this rationale, the Division issued a delinquent tax notice to Accord HR.

¶ 2 Accord HR appealed, and the hearing officer reversed. The hearing officer concluded that each of the five Accord entities was an "employer" entitled to a separate "employer" tax account. The hearing officer further determined that section 8–70–114(1), which provides that "[a]ll individuals performing services within this state for any employing unit that maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit," applied only to the status of individuals for benefits purposes, not to the status of separate employers for tax purposes. The Division appealed the hearing officer's decision to the Industrial Claim Appeals Office ("ICAO"), which reversed. In its Final Order, the ICAO held that section 8–70–114(1) gave the Division the authority to combine the various employer accounts for the purposes of assessing taxes. On appeal, the court of appeals reversed the ICAO's Final Order and reinstated the hearing officer's decision.

¶ 3 We now affirm the court of appeals. We conclude there is nothing in the language of section 8–70–114(1) that gives the Division authority to collapse separate employer accounts into a single employer account for purposes of assessing unemployment taxes. The statute simply states under what circumstances individuals will be deemed to be employed by a single employing unit for purposes of paying benefits.

## I.

¶ 4 Accord HR is a professional employer organization operating in approximately forty-five states, including Colorado. Four other entities related to Accord HR—Accord Human Resources of New York, Inc.; Accord Human Resources of California, Inc.; Accord Human Resources of California II,

Inc.; and Accord Human Resources of Colorado, Inc. ("Accord CO")—also transact business in Colorado.

¶ 5 The parties do not dispute that each of the Accord entities was an "employer" as defined by section 8–70–113(1)(a)(II), C.R.S. (2011). In 2004, the Division assigned each of the Accord entities a separate employer account and tax rate, and issued separate Notices of Employer Tax Rate to each of the Accord entities. Accord HR was assigned an unemployment tax rate of 3.82 percent and Accord CO was assigned a rate of 2.52 percent. During the first quarter of 2004, Accord HR transferred between 340 and 481 of its employees, approximately 57 percent of Accord HR employees in Colorado, to Accord CO.[1] Accord CO then paid unemployment taxes on the transferred employees' wages according to the tax rate assigned to Accord CO. As a result of the transfer, Accord HR's unemployment taxes decreased.

¶ 6 In 2007, the Division issued a Liability Determination (the "Determination") to Accord HR assessing back unemployment taxes and interest. In the Determination, the Division assigned the Accord entities one blended tax rate for all five entities. The Division concluded that section 8–70–114(1) authorized the Division to collapse the five Accord entities' accounts and combine their unemployment tax rates. By combining the account numbers and rates of the five Accord entities, the Division calculated that Accord HR owed in excess of $500,000 in unemployment taxes.

¶ 7 Accord HR appealed the Determination. On appeal, a hearing officer reversed the Determination and the Division's assessment of delinquent unemployment taxes. The hearing officer held that each of the Accord entities was an "employer" under section 8–70–113(1)(a)(II), and, therefore, required separate employer accounts and tax rates under section 8–76–103(1)(a), C.R.S. (2011). Furthermore, the hearing officer found that, contrary to the Division's claims, section 8–70–114(1) applied only to the status

1. The record does not contain any findings of fact as to why Accord HR transferred employees to Accord CO.

of individuals for benefits purposes, not to the status of separate employers for unemployment tax purposes. Therefore, the hearing officer held that the Division did not have authority to consolidate the separate employer accounts into a single employer account for unemployment tax purposes.

¶ 8 The Division appealed the hearing officer's decision to the ICAO. The ICAO reversed the decision of the hearing officer and held that section 8–70–114(1) was not limited to benefits determinations but could be applied to employer accounts for the purposes of assessing a tax. In its Final Order, the ICAO found that because there was a connection in ownership, all of the Accord entities were separate establishments of the same employing unit and, thus, the combination was permissible.

¶ 9 Accord HR then appealed the ICAO's Final Order. The court of appeals reversed the ICAO's Final Order and reinstated the hearing officer's decision. The court determined that section 8–70–114(1) did not authorize the Division to collapse separate employer tax accounts into a single account and assess taxes retroactively based on elements of common control or ownership. Because each of the individual Accord entities met the definition of employer under section 8–70–113(1)(a)(II), the court held that the Division was required to maintain a separate employer tax account for each such entity. We agree and affirm.

## II.

¶ 10 The Colorado Employment Security Act, sections 8–70–101 to –82–105, C.R.S. (2011) ("CESA"), establishes an unemployment insurance fund ("Fund") financed by employer-paid premiums or taxes. Under CESA, the Division collects taxes from employers for payment into the Fund and pays benefits to eligible, unemployed individuals. CESA bifurcates these duties, with one section of CESA providing procedures for the calculation and collection of taxes paid by employers, and another section of CESA providing procedures for the determination of benefits paid to former employees. The distinction between the two sections of CESA is an important one.

¶ 11 Benefits are paid from the Fund to individuals who meet the eligibility criteria. §§ 8–73–101, –102, C.R.S. (2011). The benefits sections should be construed liberally in order to further the remedial and beneficent purposes of lightening the burden of unemployment on those who are involuntarily unemployed. § 8–70–102; *Colo. Div. of Emp't & Training v. Hewlett*, 777 P.2d 704, 706–07 (Colo.1989).

¶ 12 In contrast, only an "employer" is required to pay unemployment taxes into the Fund based on the amount of wages paid to current employees and the amount of claims made by former employees. §§ 8–76–102, –103, C.R.S. (2011). Because the payments made by employers are a tax, the taxing section of CESA will be strictly construed. *See Cottrell Clothing Co. v. Teets*, 139 Colo. 558, 342 P.2d 1016 (1959); *Washington Cnty. Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 150 (Colo.2005). "When construing tax provisions, we do not extend the statute's operation beyond its clear import, or deprive the taxpayer of a legitimate favorable construction of the statutory or regulatory provision at issue." *Washington Cnty. Bd. of Equalization*, 109 P.3d at 150.

¶ 13 Section 8–76–103(1)(a) states that the Division "shall maintain a separate account for each employer" and credit that account with that employer's taxes. The Division assigns each account an experience rating based on the amount of benefits paid to former employees of the employer. § 8–76–103. The employer's experience rating and the overall wages that an employer pays in Colorado are used in a formula to determine an employer-specific tax rate. §§ 8–76–102, –103.

¶ 14 Because an employer's overall liability to the Fund is, in part, based on the number of unemployment claims filed against it, it follows that an employer may have a lower tax rate if it has very few or no unemployment claims filed against it. In this case, Accord HR, an entity with a higher tax rate, transferred employees to Accord CO, an entity with a lower rate, thus reducing

Accord HR's unemployment tax burden. The Division contends that it had authority under section 8–70–114(1) to combine the various employer accounts held by the Accord entities in order to erase the tax advantage Accord HR obtained by transferring the employees. We disagree.

¶ 15 Section 8–70–114(1) provides that "[a]ll individuals performing services within this state *for any employing unit* that maintains two or more *separate establishments* within this state shall be deemed to be employed *by a single employing unit* for all the purposes of articles 70 to 82 of this title." § 8–70–114(1) (emphasis added). The Division contends that section 8–70–114(1) authorizes it to combine employer tax accounts into a single "employing unit" account for the calculation of taxes. We find the Division misinterprets section 8–70–114(1) based on its language and terms of art defined by the legislature.

¶ 16 The relevant statutory term for evaluating unemployment tax liability is "employer," not "employing units." As noted above, only "employers" pay into the Fund, and the Division is required to maintain separate accounts where each "employer[']s" unemployment taxes are received. Thus, the fact that an "employing unit" operating "separate establishments" shall be deemed a single "employing unit" under section 8–70–114(1) does not advance the Division's argument.

¶ 17 The statute's language demonstrates that the legislature intended to draw a distinction between "employing unit," "employer," and "separate establishment." An "employing unit" is an extremely broad term used to describe virtually any individual or organization that employs anyone in the state. § 8–70–114(1).[2] "Employers" are a subset of "employing units" that meet additional qualifications, such as paying a certain

amount of wages. § 8–70–113(1)(a)(II).[3] A "separate establishment" is not defined by the statute, but in context the phrase suggests that an "employing unit" may operate two or more separate establishments but still retain its character as a single "employing unit."

¶ 18 We have held that "the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo.2008). As noted above, only "employers," not "employing units," are required to pay taxes, and the Division maintains separate accounts for only "employers," not "employing units." Thus, the fact that an "employing unit" operating "separate establishments" shall be deemed a "single employing unit" does not give the Division authority to combine separate employer accounts into a single employer account. Such a logical leap is not supported by the statute's language.

¶ 19 Moreover, section 8–70–114(1) speaks only to how individuals are to be treated for benefit purposes, not to how taxes are to be assessed by the Division. Specifically, the statutory language states that "[a]ll individuals" who have worked for employing units with separate establishments "shall be deemed to be employed by a single employing unit for all the purposes of article 70 to 82 of this title." § 8–70–114(1). The language of section 8–70–114(1) thus addresses how employees are to be classified for receiving benefits, not on how employers' taxes are to be assessed. *See, e.g., Giacopelli v. Indus. Comm'n*, 622 P.2d 111, 112 (Colo.App. 1980) (where claimant had worked for one hotel and then another, remand was appropriate to determine if both establishments were a "single employing unit" and, if so,

---

**2.** "Employing unit" is defined as "any individual or type of organization, including any partnership, limited liability partnership, limited liability company, limited liability limited partnership, association, trust, estate, joint stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or legal representative of a deceased person, who employs one or more individuals performing services within this state." § 8–70–114(1).

**3.** Specifically, an "employer" is an employing unit that, after December 31, 1998, either paid wages during any calendar quarter totaling one thousand five hundred dollars or more or employed at least one employee for any portion of a day for twenty weeks during the current or preceding calendar year. § 8–70–113(1)(a)(II).

whether transfer from one to the other was a "less desirable transfer" qualifying claimant for benefits). The Division stresses that section 8–70–114(1)'s classification of individuals as having worked for a single "employing unit" applies "for all purposes." But again, the problem with the Division's argument is that section 8–70–114(1) does not assess taxes with regard to classification of individuals as having worked for single employing units; in other words, tax assessment is not a "purpose" to which section 8–70–114(1) could apply.

¶ 20 The Division also argues that it is unwise, from a public policy perspective, to permit an employer to shift employees from an entity with a higher tax rate to one with a lower rate to lower its unemployment tax burden—a practice known as "dumping." The Division notes that, in 2004, Congress passed the SUTA [4] Dumping Prevention Act, mandating that states amend their employment compensation laws to prevent this practice. 42 U.S.C. § 503(k) (2006). Colorado adopted such a law in 2005. See § 8–76–104, C.R.S. (2011). However, this law was not enacted at the time Accord HR transferred a portion of its Colorado employees to Accord CO, and both parties agree that the new statute does not apply to the case here. We decline the Division's invitation to apply the legislature's policy determination prior to its adoption of applicable statutory language, especially given our background principle that tax statutes are to be construed narrowly. *Washington Cnty. Bd. of Equalization*, 109 P.3d at 150. Further, we make the common sense observation that had the Division already possessed the authority to combine various employer accounts under section 8–70–114(1), there would have been no reason for the legislature to have acted in 2005. *See Leonard v. McMorris*, 63 P.3d 323, 331 (Colo. 2003) ("We presume the General Assembly knows the pre-existing law when it adopts new legislation or makes amendments to prior acts.").

¶ 21 Finally, it is significant that the authority provided to the Division in the 2005 statute is far narrower than the authority it claims to possess under section 8–70–114(1). In this case, the Division takes the position that section 8–70–114(1) permits it to combine employer accounts whenever it can be shown that the entities share common ownership and control.[5] By contrast, under the 2005 statute, if there has been a transfer of "trade or business" from one employer to another employer that share common ownership, the general rule is that the unemployment experience rating of the predecessor employer is transferred to the successor employer. § 8–76–104(2)(b) (if "an employer transfers all or a portion of its trade or business to another employer and, at the time of the transfer, there is substantially common ownership, management, or control of the two employers, the unemployment experience attributable to the predecessor employer shall be transferred to the successor employer"). The Division may combine employer accounts *only* if it is shown that the transfer was accomplished for the purpose of avoiding tax liability:

> If, following a transfer experience, the division determines that the purpose of the transfer of the trade or business was solely or primarily to obtain a reduced liability for contributions, the division shall combine the experience rating accounts of the employers into a single account and shall assign a single rate to the account.

*Id.* Therefore, under the 2005 statute, if there has been a transfer of trade or business from one "employer" to another "employer" with substantially common ownership, the experience rating of the predecessor employer transfers to the successor employer, unless the transfer was accomplished for the purpose of avoiding unemployment taxes, in which case the Division is authorized to combine employer accounts. If we were to adopt the Division's interpretation of section 8–70–114(1), then, we would have to find that the leg-

---

**4.** SUTA stands for State Unemployment Tax Act.

**5.** Because we find that section 8–70–114(1) does not give the Division authority to consolidate separate employer accounts under a single employer account for purposes of assessing unem-

ployment taxes, we need not determine whether the Division properly applied principles of common ownership and control in deciding to consolidate the accounts.

islature granted broad authority to the Division to combine employer accounts under section 8–70–114(1), and then in 2005 impliedly repealed that authority through new legislation that expressly authorized a far more limited power to combine employer accounts. Given our general reluctance to find that statutes have been impliedly repealed, *Frank M. Hall, Inc. v. Newsom*, 125 P.3d 444, 451 (Colo.2005), we decline to adopt such an interpretation in this case.

¶ 22 In sum, we conclude there is nothing in the language of section 8–70–114(1) that gives the Division authority to collapse separate employer accounts into a single employer account for purposes of assessing unemployment taxes. The statute simply describes circumstances where individuals will be deemed to be employed by a single employing unit for paying benefits—and nothing more. Applying this reasoning here, section 8–70–114(1) did not provide the Division with the authority to consolidate the various employer accounts held by the Accord entities[6] for purposes of assessing taxes.

### III.

¶ 23 For the reasons stated above, we affirm the holding of the court of appeals.

Justice HOBBS dissents.

Justice MÁRQUEZ does not participate.

JUSTICE HOBBS, dissenting:

¶ 24 I respectfully dissent. I disagree with the majority's conclusion that the Division lacked authority to consolidate the unemployment tax accounts of the five entities wholly owned by Accord Human Resources, Inc. (Accord HR). In my view, section 8–70–114(1), C.R.S. (2003) authorized the Division to find that the Accord HR entities, all owned by the same holding company, constituted a "single employing unit" for unemployment premium collection purposes. The court of appeals' decision should be reversed

and the decision of the Industrial Claim Appeals Office reinstated.

¶ 25 As I read it, the crux of the majority opinion is that

[O]nly "employers," not "employing units," are required to pay taxes, and the Division maintains separate accounts only for "employers," not "employing units." Thus, the fact that an "employing unit" operating separate "establishments" shall be deemed a "single employing unit" does not give the Division authority to combine separate employer accounts into a single employer account. Such a logical leap is not supported by the statute's language.

Moreover, section 8–70–114(1) speaks only to how individuals are to be treated for benefit purposes, not to how taxes are to be assessed by the Division.

Maj. op. ¶¶ 18–19. However, section 8–70–114(1), a definitional section within the Colorado Employment Security Act (CESA), *requires* the Division to deem an "employing unit that maintains two or more separate establishments" in Colorado to be a "single employing unit" for *all purposes* of CESA. One of the remedial purposes of CESA is to collect and set aside funds from employers in order to provide unemployment benefits for individuals. *See* § 8–70–102, C.R.S. (2011). Thus, the Division had the authority to consider the Accord entities to be a "single employing unit" for unemployment premium collection purposes. This is not a logical leap; it is plain statutory language. In my view, neither caselaw, statutory provisions, nor reasonable statutory interpretation supports the majority's conclusion that section 8–70–114(1) applies only to employee benefit determinations and not to unemployment premium collection.

¶ 26 Under CESA, unemployment "premiums" are payable to the state yearly "by each employer." § 8–76–101(1). The Division maintains "a separate account for each employer," § 8–76–103(1)(a), and the annual premium collected from an employer is tied

---

6. The Division also argues that it was error for it to assign each Accord entity a separate employer account in the first instance. Because the Division did not raise this issue below, we do not address it here. *Beauprez v. Avalos,* 42 P.3d 642, 649 (Colo.2002) (an issue not presented to or raised at the trial court will not be considered on appeal).

to a formula which depends, in part, on wages and premiums paid by the employer and benefits paid out from the employer's unemployment tax account, §§ 8–76–101 to – 103. In other words, an employer's yearly premium is directly related to the number of its current employees and to unemployment claims by its former employees. The Division collects these premiums to provide funds "for the benefit of persons unemployed through no fault of their own." § 8–70–102 (legislative declaration); *see* §§ 8–73–101(1), 8–77–101 to –109.

¶ 27 Each of the five Accord entities operating in Colorado is owned by the same holding company and lists the same Oklahoma address in reports to the state. Each had separate unemployment tax accounts with the Division in 2004. Four of the registered entities share the same board of directors and corporate officers; Accord Human Resources of New York, Inc., is operated by a separate board of directors and corporate officers. All five are run by the same CEO.

¶ 28 In early 2004, Accord HR significantly reduced its yearly unemployment premiums by transferring almost sixty percent of its total Colorado workforce from Accord HR to Accord HR Colorado, which had a much lower unemployment premium rate because it had recently registered in Colorado and had few unemployment claims from former employees. The payroll transfer from one corporation to another, both registered under the same address, holding company, board of directors, and corporate officers, triggered the Division's audit in August 2004. With this transfer, the parent company, Accord HR, effectively saved millions of dollars in unemployment premiums payable to the state unemployment compensation fund.

¶ 29 The Division determined that section 8–70–114(1), C.R.S. (2003) provided it the authority to consolidate the five Accord entitites' tax accounts into a single account because the large transfer of employees from the tax rolls of a parent company to a subsidiary indicated that the parent, Accord HR, was operating its five subsidiaries as a single entity within the state. According to the Division, Accord HR met the section 8–70–114(1) criteria as a "single employing unit" maintaining "two or more separate establishments" in the state. I agree with the Division.

¶ 30 Statutory interpretation is a question of law that we review de novo. *Clyncke v. Waneka,* 157 P.3d 1072, 1076 (Colo.2007). When interpreting a statute, it is our primary goal to give effect to legislative intent. *Id.* at 1077. To determine legislative intent, we look first to the statutory language itself and review the plain and ordinary meaning of the words. *Id.* If the language is plain and clear, the statute is to be applied as written because it is presumed that the General Assembly meant what it said. *Id.*

¶ 31 Colorado's unemployment insurance scheme, CESA, is a remedial statute which is to be liberally construed in order to further its remedial and beneficent purposes. *Colo. Div. of Emp't & Training v. Hewlett,* 777 P.2d 704, 706–07 (Colo.1989). Under CESA, "employers" must pay premiums to fund unemployment insurance benefits. *See* § 8–76–102(1). An individual unemployed through no fault of her own, who meets the eligibility criteria in article 73 of CESA, shall receive unemployment benefits chargeable to the account of her "employer." *See* § 8–73–108. "Employer" is defined as an "employing unit" that pays a minimum amount of wages per year. § 8–70–113(1). An "employing unit" is defined as any "individual or type of organization," including a corporation, that employs at least one individual in Colorado. § 8–70–114(1). Employees of "any employing unit that maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of articles 70 to 82 of this title." *Id.*

¶ 32 I conclude the definitions at issue here are plain. The Division maintains unemployment tax accounts for "employers." An "employer" is an "employing unit" with certain characteristics. Employees of "any employing unit" that operates separate establishments in Colorado shall be considered to be employed by a "single employing unit." Thus, employees of "a single employing unit" must be considered employees of a single "employer" for all CESA purposes. Because

unemployment tax assessment and collection is a CESA purpose, the Division has the authority to consider the employees of a single employing unit to be employed by a single employer for unemployment tax collection.

¶ 33 Here, at the relevant time of the Division's audit, Accord HR was an "employing unit that maintains two or more separate establishments within this state,"[1] such that the Division properly considered employees of the five Accord entities to be employed by Accord HR as a "single employing unit" for all CESA purposes. Because the Division had the authority to consider employees of the five Accord entities employees of a single employing unit, it necessarily had the authority to consider employees of the five Accord entities to be employees of a single "employer." See § 8–70–113(1) ("employer" is an "employing unit" that meets certain characteristics). And this classification clearly applies to all purposes of CESA. § 8–70–114(1).

¶ 34 Unlike the majority, I do not read the crucial sentence in section 8–70–114(1)[2] as applying only to the classification of employees for individual benefit calculations. See Maj. op. ¶¶ 19–20. "[A]ll the purposes of articles 70 to 82" necessarily includes the purpose of collecting funds to provide unemployment benefits to eligible persons as described by the formulas in article 76 of CESA, sections 8–76–101 and –102. In my view, it would be unreasonable to construe the statute to require the Division to count employees as employed by one employer (or employing unit) for benefit disbursement purposes and to count the same employees as employed by a different employer for tax collection purposes.[3] In other words, if employees of the Accord entities may be classified as employed by single employing unit—Accord HR—for benefit disbursement purposes, then Accord HR's contribution to the unemployment compensation fund, which is based on characteristics of its employees, must also be based on Accord HR's classifi-

---

1. "Separate establishment" is not specifically defined by the legislature. *Black's Law Dictionary* defines "establishment" as "[a]n institution or place of business." *Black's Law Dictionary* 626 (9th ed. 2009). This accords with a plain understanding of the term. The majority opinion states that an "establishment" must be different than an "employer" and an "employing unit," but offers no definition: "A 'separate establishment' is not defined by the statute, but in context the phrase suggests that an 'employing unit' may operate two or more separate establishments but still retain its character as a single 'employing unit.'" Maj. op. ¶ 17.

I agree with the majority's understanding. One example of "an employing unit that maintains two or more separate establishments" could be two hotels with different names, each owned and operated by the same corporate entity. *See, e.g., Giacopelli v. Indus. Comm'n,* 622 P.2d 111, 111–12 (Colo.App.1980) (remanding for factual finding on whether two hotels, with different names, shared a "connection in ownership" such that they should be considered a "single employing unit" under section 8–70–114(1)). Other examples abound of entities that could be considered employers, employing units, and establishments, such as restaurant chains or franchises, retail stores, or banks.

Here, the Accord entities satisfy a common sense definition of "establishment" as a "place of business." Testimony at the Division hearing established that Accord HR Colorado is wholly owned by Accord HR. New employees of Accord HR Colorado are supplied a general employee manual from Accord HR, and Accord HR employee policies apply to employees of each entity. The five entities share an address, a holding company, a CEO, and four out of five share the same board of directors and corporate officers. In my view, the plain language of section 8–70–114(1) evinces a legislative intent to require the Division to consider the Accord entities to be establishments of a "single employing unit" for CESA purposes.

2. "All individuals performing services within this state for any employing unit that maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of articles 70 to 82 of this title." § 8–70–114(1).

3. The complicated formulas used to calculate an employer's yearly contributions to the unemployment compensation fund are designed to ensure that any unemployment benefits owed to former employees of the employer are paid with premiums collected from that employer. The formulas take into consideration past unemployment claims from former employees, employees' tenure and experience rating, and wages paid. *See* § 8–76–103. The scheme aims to balance benefits paid out with taxes collected from an employer, a balancing which become more difficult if an employee may be classified as employed by one employing unit for benefit disbursement purposes and by a different employing unit for premium assessment and collection purposes.

cation as a single employing unit with separate "establishments."

¶ 35 The majority construes section 8–70–114(1) differently, invoking canons of construction to suggest that the legislature never intended the crucial sentence to apply to the Division's authority to assess unemployment premiums from employers. Although it is not completely clear to me, the majority appears to assert that the crucial sentence in the definition of "employing unit" applies to the definition of "employer" only when "employer" is used in the benefits calculation sections of CESA, and not in the premium assessment provisions. Nothing in the text of the statute supports this proposition, and I do not read CESA to be so limited.

¶ 36 The majority invokes canons of construction to buttress its unsound conclusion. First, the majority notes that we construe tax statutes narrowly, and because unemployment premiums are a tax, the sentence in the employing unit definition should not be construed to give the Division the authority to combine the tax accounts of various employers that may be "separate establishments" of an employing unit. Maj. op. ¶¶ 12, 19–20.

¶ 37 However, the language at issue here is not in the taxing section of CESA. Article 70, which contains section 8–70–114(1), provides definitions and general provisions applicable to the whole of CESA, while article 76 provides the unemployment premium collection authority of the state. Generally, when the legislature provides a formal definition for a term, that definition controls throughout the entire statute. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597–98 (Colo.2005). In my view, the definition of "employing unit" in section 8–70–114(1) applies each time "employer" is referenced in the statute, which includes the benefit disbursement sections as well as the premium assessment provisions. In other words, I would not choose different constructions for a term that is specifically defined by the legislature and used throughout CESA.

¶ 38 Further, although article 76 of CESA requires employers to pay unemployment premiums to the Division, CESA as a whole is a remedial statute, not a taxing statute. The purpose of CESA is not to raise revenue for the state, but to collect revenue in order to compile "unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." [4] § 8–70–102. Thus, I would not interpret narrowly the definitional sections of CESA, a remedial statute. *See Hewlett*, 777 P.2d at 706–07.

¶ 39 Second, the majority employs another canon when it asserts that when the legislature acted to amend CESA in 2005, it must have granted the Division new authority it previously did not have. *See* Maj. op. ¶¶ 20–21 ("[H]ad the Division already possessed the authority to combine various employer accounts under section 8–70–114(1), there would have been no reason for the legislature to have acted in 2005."). This is

---

4. A 1945 California court applied an identical definition of "single employing unit" to an employer who set up several "establishments" in the state to avoid paying unemployment taxes. *Wiltsee v. Cal. Emp't Comm'n*, 69 Cal.App.2d 120, 158 P.2d 612, 613–14 (1945). In construing the definition to apply to employers for unemployment tax assessment purposes, the court noted that the unemployment insurance scheme is much different than a general taxing scheme:

> Here we have a statute which, while it requires a "contribution" that in itself may possibly be regarded as a tax, has a much broader object than the mere raising of revenue. It sets up a scheme for ameliorating the hardships of unemployment, and undertakes, in conjunction with the United States Government, to pay unemployment benefits to those who, without fault of their own, are out of work, ... and to measure both burden and benefits by the amount of compensation paid to employees when they are working. In view of the purpose of these provisions they should not be whittled down by narrow construction, nor should exceptions not clearly justified by their language be engrafted upon them by judicial interpretation.

*Id.* at 616 (quoting *Cal. Emp't Comm'n v. Black-Foxe Military Inst.*, 110 P.2d 729, 732 (Cal.App. Dep't Super. Ct.1941)).

I agree. CESA is meant to "lighten the burden" of unemployment "by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment." § 8–70–102. Thus, I would not apply the canons we apply to taxing statutes to interpret a definition in a remedial statute. *See Hewlett*, 777 P.2d at 706–07 (CESA, a remedial statute, should be construed liberally.).

incorrect. The 2005 amendment to section 8–76–104 was enacted by the General Assembly soon after Congress *required* states to include specific provisions in state unemployment acts in order to continue receiving federal unemployment funding. *See* SUTA Dumping Prevention Act of 2004, Pub. L. No. 108–295, 118 Stat. 1090 (codified as amended at 42 U.S.C. § 503(k) (2006)) ("For purposes of [receiving Federal Unemployment Tax funding], the unemployment compensation law of a State must provide. . . ."); ch. 155, title of act, 2005 Colo. Sess. Laws 543, 543 ("An Act concerning modifications to the method of determining the unemployment insurance tax rate of an entity that acquires an employer's business for purposes of complying with the federal 'SUTA Dumping Prevention Act of 2004'."); § 8–76–104(2)(b), C.R.S. (2011) (adopting the language of 42 U.S.C. 503(k)(1)(A)). In my view, the enactment of the 2005 amendment had no bearing on the Division's pre–2005 authority to combine employer accounts when an employer may be engaged in payroll dumping and where the employer meets the criteria as an employer that maintains "separate establishments" in the state. The CESA amendment was enacted to comply with federal law, not to comment on the authority the Division had previously. I would give little weight to the 2005 amendment in interpreting whether the Division had pre–2005 authority, under the plain language of section 8–70–114(1), to consider Accord HR a single employing unit that maintains separate establishments in the state.

¶ 40 The majority cites a court of appeals case to support its assertion that section 8–70–114(1) only applies to benefits claims of individuals. However, that case and a court of appeals case cited below, do not support the majority's claim. In *Giacopelli*, the court of appeals considered whether a former employee of two different hotels, each owned or managed by the same individual, was entitled to an unemployment benefit calculation as though the two hotels were a "single employing unit" under section 8–70–114(1). 622 P.2d at 111–12. The court of appeals remanded because "[t]he evidence indicates a connection in ownership" such that the hotels

may have been separate establishments of a single employing unit. *Id.* at 112 (remanding for factual findings "to determine if there was a single employing unit").

¶ 41 *Dewhurst v. Industrial Claim Appeals Office,* cited by the court of appeals' decision below, involved whether an employee who was transferred from a Montana Wal–Mart to a Colorado Wal–Mart was continuously employed by the same "employing unit" for unemployment benefit purposes. 148 P.3d 378, 379–80 (Colo.App.2006). The court of appeals in that case agreed with the employee and found that "[s]ection 8–70–114(1) merely defines an employing unit for purposes of determining benefits for those working in Colorado and describes one situation in which a worker will be deemed to have been employed by a single employing unit." *Id.* at 380.[5] Further, the court noted that section 8–70–114(1) does not "describe[ ] the sole or exclusive circumstances in which a single employing unit may exist." *Id.* at 380.

¶ 42 In my view, *Dewhurst* and *Giacopelli* do not limit section 8–70–114(1)'s applicability to *only* determinations of unemployment benefits for individuals. Those cases narrowly concerned the applicability of that section to former employees' benefit eligibility determinations, not to state maintenance of employer tax accounts or unemployment tax collection. To the extent those decisions suggest the outer limits of section 8–70–114(1)'s applicability to other purposes of CESA, those statements are dicta.

¶ 43 I would conclude that the phrase "all purposes" in section 8–70–114(1) applies that section to the Division's maintenance of employers' unemployment tax accounts and to unemployment premium assessment and collection purposes. I would also conclude that the hearing officer's factual finding that the Accord entities met the criteria of a single employing unit that maintains separate establishments was supported by evidence in the record. In my view, section 8–70–114(1) gave the Division the authority and the duty to consider the Accord entities to be a single employing unit for the purposes of assessing

---

5. That situation is, apparently, where the worker's employer "maintains two or more separate establishments within [Colorado]." § 8–70–114(1); *Dewhurst,* 148 P.3d at 380.

unemployment premiums as well as benefit disbursement for individuals. Thus, I would reverse the court of appeals and conclude that the Division had the authority to consolidate the unemployment tax accounts of the Accord entities because Accord HR is an employing unit that maintains "separate establishments" in Colorado.

¶ 44 Accordingly, I respectfully dissent.