The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 13, 2020

## 2020COA29

**No. 19CA0638, *Keysight Tech. v. ICAO* — Labor and Industry — Colorado Employment Security Act — Premiums and Coverage — Transfer of Experience and Assignment of Rates**

On a matter of first impression, a division of the court of appeals considers whether the Division of Unemployment Insurance was required to transfer the experience — essentially the claims history for purposes of calculating a statutory employer's unemployment insurance premium rate — of a predecessor employer to a successor employer that had spun off several years earlier. The division holds that the Division of Unemployment Insurance was not required to transfer the predecessor employer's experience pursuant to section 8-76-104(2)(b), C.R.S. 2019. The division additionally holds that, under applicable Division of Unemployment Insurance regulations, the successor employer's

experience transfer/rate modification request was untimely. The division, thus, affirms.

Court of Appeals No. 19CA0638
Industrial Claim Appeals Office of the State of Colorado
DD No. 46273-2018

Keysight Technologies, Inc.,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Division of
Unemployment Insurance,

Respondents.

ORDER AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Fox and Berger, JJ., concur

Announced February 13, 2020

Akerman LLP, Brian M. Nugent, Melissa L. Cizmorris, Denver, Colorado, for
Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Philip J. Weiser, Attorney General, Krista Maher, Assistant Attorney General,
Denver, Colorado, for Respondent Division of Unemployment Insurance

¶ 1     This unemployment compensation tax appeal presents a narrow question: Is the Division of Unemployment Insurance (Division) required to transfer the "experience" — essentially the claims history for purposes of calculating a statutory employer's unemployment compensation insurance premium rate — of a predecessor employer, Agilent Technologies, to a successor employer, the petitioner, Keysight Technologies, Inc., which had been spun off from Agilent several years earlier?

¶ 2     The Industrial Claim Appeals Office (Panel) concluded that several statutory provisions, including, as pertinent here, section 8-76-104(2)(b), C.R.S. 2019, do not require transferring Agilent's experience to Keysight.  We agree with the Panel's construction of the statute.  We also conclude that, under applicable Division regulations, Keysight's experience transfer/rate modification request was untimely.  Consequently, we affirm the Panel's order.

I.  Background

¶ 3     Keysight was created and spun off from Agilent in 2014. Keysight, which is wholly owned by Agilent, was not an active business before the spinoff.  Keysight acquired 75% of Agilent's Colorado employees and half of Agilent's infrastructure, and became

1

a Colorado statutory employer.  Keysight applied for its own Colorado unemployment compensation insurance account.  The Division notified Keysight of its account number and premium rate in October 2014.

¶ 4     More than three years later, in 2018, Keysight asked the Division to transfer Agilent's experience to Keysight and "revise Keysight's unemployment tax rates starting on its liability date forward."  (A statutory employer's unemployment compensation tax rate is based on a number of factors, including the unemployment compensation benefit payments made to its former employees over the twelve-month period before the "computation date."  § 8-76-102.5(3), C.R.S. 2019.)

¶ 5     The Division denied Keysight's request.  After a series of appeals, hearing officer decisions, and Panel remand orders, the hearing officer entered a decision addressing whether certain subsections of section 8-76-104 authorize the transfer of Agilent's experience to Keysight.

¶ 6     The hearing officer concluded that section 8-76-104(3), which addresses an employer's transfer of a "clearly segregable unit" of its business to a successor, does not apply because Keysight "was not

a segregable unit" of Agilent.  (The hearing officer further concluded that, because section 8-76-104(3) does not apply, the sixty-day statutory time limit for applications to transfer unemployment compensation experience under this subsection also does not apply. *See* § 8-76-104(3)(g).)

¶ 7    The hearing officer further concluded that section 8-76-104(1)(a), which addresses entities that become employers by acquiring "all of the organization, trade, or business or substantially all of the assets of one or more employers," does not apply because Keysight had acquired 75% of Agilent's Colorado employees and only half of its infrastructure.

¶ 8    The hearing officer concluded, however, that section 8-76-104(2)(b) applies.  That subsection addresses an employer's transfer of all or part of its trade or business to another employer where there is substantially common ownership, management, or control of the two employers immediately following the transfer. The hearing officer determined that the Division must transfer Agilent's experience to Keysight and recalculate Keysight's premium rate "made effective immediately upon the date of the transfer of the trade or business" from Agilent.

¶ 9     The Panel affirmed in part and reversed in part.  The Panel upheld the hearing officer's determination that subsections (1) and (3) of section 8-76-104 do not apply to allow transfer of Agilent's experience to Keysight.  However, contrary to the hearing officer's decision, the Panel also concluded that subsection (2)(b) does not apply.  Specifically, it concluded that section 8-76-104(2), including subsection (2)(b), only addresses situations in which the successor/transferee employer was already a statutory employer before it acquired all or part of the predecessor/transferor employer's trade or business.  Because Keysight did not exist before the transfer from Agilent, the Panel concluded that subsection (2)(b) does not apply and that Keysight does "not qualify for a transfer of experience under this section."

## II.  Discussion

### A.  Section 8-76-104(2)(b)

¶ 10    Keysight contends that the Panel incorrectly interpreted section 8-76-104(2)(b) as applying only when the successor employer was an existing statutory employer before the trade or business was transferred to it.  We perceive no error.

¶ 11    When construing statutes, we seek to give effect to the General

Assembly's intent. *Colo. Med. Bd. v. McLaughlin*, 2019 CO 93, ¶ 22,

451 P.3d 841, 845. We read words and phrases in context,

according them their plain and ordinary meanings. *Id.*; *see also*

*Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 2018 CO 44,

¶ 12, 418 P.3d 1173, 1176. If the language is clear, we apply it as

written and need not resort to other tools of statutory

interpretation. *Colo. Med. Bd.*, ¶ 22, 451 P.3d at 845.

¶ 12    "A 'cardinal principle of statutory construction' is that no

clause, sentence, or word is 'superfluous, void, or insignificant.'"

*Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*,

2018 COA 92, ¶ 31, ___ P.3d ___, ___ (quoting *TRW Inc. v. Andrews*,

534 U.S. 19, 31 (2001)). "Statutory interpretation presents a

question of law that we review de novo." *Colo. Med. Bd.*, ¶ 22, 451

P.3d at 845.

¶ 13    Section 8-76-104(2)(b) provides, in relevant part, as follows:

> If an employer transfers all or a portion of its
> trade or business to another employer and, at
> the time of the transfer, there is substantially
> common ownership, management, or control of
> the two employers, the unemployment
> experience attributable to the predecessor
> employer shall be transferred to the successor

5

> employer. The rates of both employers shall be *recalculated* and made effective immediately upon the date of the transfer of the trade or business.

(Emphasis added.)

¶ 14 The Division argues, and we agree, that subsection (2)(b)'s language requiring that the premium rate of the successor employer be "recalculated" necessarily contemplates that the successor employer had a Division-calculated premium rate before the transfer. Importantly, the word "recalculate" means "to calculate or estimate again." Webster's Third New International Dictionary 1893 (2002). And having a pre-existing Division-calculated premium rate, in turn, contemplates that the successor employer was already a statutory employer. *See generally* § 8-76-102.5 (setting forth the methods and procedures for calculating employer premium rates).

¶ 15 Keysight relies on section 8-76-104(2)(a), which addresses transfers between employers where "there is no substantial common ownership, management, or control of the two employers." Keysight specifically points to this subsection's language, stating that it applies "if the successor employer was an employer . . . prior to the date of acquisition." Keysight argues that, because

subsection (2)(b) does not contain similar language, it does not require that the successor employer was a pre-existing statutory employer.

¶ 16 The Panel concluded, however, that when subsections (2)(a) and (2)(b) are read together, both address "situations where an employer transfers all or a portion of its trade or business to another *already existing* employer," and the difference in the two subsections' applicability turns merely on "whether there is substantial common ownership between the two employers."

¶ 17 We acknowledge that subsection (2) is not a model of clarity. Even so, reading subsections (2)(a) and (2)(b) together, and considering subsection (2)(b)'s requirement that the premium rate of the successor employer be "recalculated," we perceive no error in the Panel's conclusion that subsection (2)(b), like subsection (2)(a), addresses circumstances where the transferee/successor employer was an existing employer at the time of the transfer.

¶ 18 Keysight argues that the Panel's interpretation of subsection (2)(b) leads to unfair results, conflicts with the SUTA Dumping Prevention Act, *see* 42 U.S.C. § 503 (2018), and places Colorado at risk of losing federal funds. ("SUTA" stands for the State

Unemployment Tax Act. *Colo. Div. of Emp't & Training v. Accord Human Res., Inc.*, 2012 CO 15, ¶ 20 n.4, 270 P.3d 985, 990 n.4.) Assuming, without deciding, that these arguments are correct, we must still interpret the statute as written. Any modification of the statute required to make it "fairer" or make it better comport with federal law is a task for the General Assembly, not for a division of this court. *See Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 243-44 (Colo. 2009) (noting that, insofar as the General Assembly made a mistake in reenacting a statute without considering the effect on another statute, "that mistake is for the General Assembly to remedy, not this court"); *Nelson v. Indus. Claim Appeals Office*, 219 P.3d 416, 420 (Colo. App. 2009) (concluding that "the effect of [a] statute is a policy consideration within the province of the General Assembly and not this court"), *aff'd sub nom. Specialty Rests. Corp. v. Nelson*, 231 P.3d 393 (Colo. 2010).

¶ 19    Because section 8-76-104(2)(b) contemplates that the successor employer was an existing statutory employer before it acquired all or part of the predecessor employer's trade or business, and because Keysight was not a statutory employer before it acquired part of Agilent's trade or business, the Panel correctly

8

concluded that this subsection did not require the Division to transfer Agilent's experience to Keysight and recalculate its premium rate.

### B. Keysight's Request Was Untimely

¶ 20    The Division argues that a separate basis for affirming the Panel's order is that Keysight did not timely request revision of its premium rate through the transfer of Agilent's experience.  We agree.

¶ 21    Section 8-76-113(2), C.R.S. 2019, provides, in relevant part, that an employer wishing to protest a notice of premium rate "shall file a request for redetermination with the [D]ivision, in accordance with rules promulgated by the director of the [D]ivision."  In October 2014, when the Division notified Keysight of its premium rate, Division regulations provided as follows:

> An employer who wishes to protest a notice of his or her premium rate shall file a written request for redetermination of the premium rate.  The written request for redetermination must be received by the Division within twenty calendar days of the date the rate notice was issued.

Dep't of Labor & Emp't Reg. 11.1.4, 7 Code Colo. Regs. 1101-2 (2014); *see Westfall v. Town of Hugo*, 851 P.2d 299, 303 (Colo. App.

9

1993) (appellate court may properly take judicial notice of state administrative regulations).

¶ 22   Keysight does not argue that Regulation 11.1.4's twenty-day time limit did not apply to its request.  The record shows that Keysight apparently filed the request because it believed the Division had assigned it an erroneous tax rate.  Indeed, at one of the hearings, a Keysight witness testified that Keysight requested the experience transfer when it discovered that the Division had allegedly "assigned an incorrect tax rate."

¶ 23   Keysight instead argues that the Division waived any timeliness challenge under Regulation 11.1.4 because it did not raise the argument during the administrative proceedings.  But an appellee may defend the underlying judgment or ruling on any ground supported by the record, so long as the appellee's rights are not thereby increased.  *See Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 428 (Colo. 1991); *Regency Realty Inv'rs, LLC v. Cleary Fire Prot., Inc.*, 260 P.3d 1, 7 (Colo. App. 2009); *Olsen & Brown v. City of Englewood*, 867 P.2d 96, 99 (Colo. App. 1993), *aff'd*, 889 P.2d 673 (Colo. 1995).

¶ 24    The record shows that Keysight waited more than three years to request the change in its premium rate, well beyond Regulation 11.1.4's twenty-day deadline.  Consequently, we agree with the Division that Keysight's untimely request provides a separate basis for upholding the Panel's ruling.  *See Stevenson v. Indus. Comm'n,* 705 P.2d 1020, 1021 (Colo. App. 1985) (affirming disqualification from benefits under alternative statutory subsection on which Panel did not rely).

## III.  Conclusion

¶ 25    The Panel's order is affirmed.

JUDGE FOX and JUDGE BERGER concur.